(117 App. Div. 381)

## HOLMES v. SEAMAN.

(Supreme Court, Appellate Division.  First Department.  February 8, 1907.)

1. ASSIGNMENTS—GRATUITY FUND—ASSIGNABLE INTEREST.

The New York Produce Exchange, of which decedent was a member, had a gratuity fund which under its by-laws did not constitute any estate .in being which could be mortgaged or pledged, but constituted a gift from subscribing members to the fund to each deceased member. Prior to decedent's death his family assigned its interest in the fund to secure his pre-existing debts, and any sums which the assignee during decedent's lifetime should pay for dues and assessments, which assignment was effective only to the extent of securing to the assignee repayment of such dues and assessments. After decedent died, the assignee, conceiving the first assignment ineffectual to enable him to collect the money from the exchange, induced plaintiff, the surviving beneficiary, to execute a new assignment to perfect the assignee's rights in the money, which she did in consideration of his allowing her to retain $500 from the fund to pay decedent's funeral and medical bills. Held, that such second assignment was not based on any consideration, and was ineffectual to increase the assignee's rights in the fund created by the original assignment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 4, Assignments, § 13.]

2. REFERENCE—TRIAL—FINDINGS OF FACT—REPORT.

A proposed finding of fact marked "Found" by a referee, but not incorporated in his report, was ineffectual for any purpose.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 42, Reference, § 134.]

Appeal from a Judgment on Report of Referee.

Action by Isabel A. Holmes against Egbert B. Seaman. From a judgment in favor of plaintiff on report of a referee, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGH-LIN, CLARKE, and SCOTT, JJ.

Albert Stickney, for appellant.

George W. Weiffenbach, for respondent.

INGRAHAM, J.  Upon the former appeal from a judgment for the plaintiff in this action the judgment was reversed and a new trial ordered.  184 N. Y. 486, 77 N. E. 724.  The decision of the Court of Appeals determined the rights of the parties to this action under the first assignment made by the plaintiff and her mother, dated April 13, 1891.  It was there held that the by-laws of the New York Produce Exchange "constitute a clear and unmistakable prohibition against the assignment or pledge by the beneficiaries of any interest in the gratuity fund of the New York Produce Exchange in payment or to secure the payment of a debt, having no relation to such fund and in nowise incurred for the purpose of keeping alive the interest of the beneficiaries in such fund.  So far, therefore, as the first assignment assumed or purported to charge the interest of the plaintiff in the gratuity fund with any liability on account of the sum of $3,614 owing by Holmes to the Oriental Bank and paid by the defendant, together with the interest thereon, that assignment was ineffectual, and to that extent the referee was right in adjudging it to be void."  It was further held,

however, that the transfer of the interest of those executing the assignment by which they agreed that the trustees of the gratuity fund of the New York Produce Exchange should be paid over to the defendant "such further sum of money as he, the said Egbert B. Seaman, shall or may pay to the said Produce Exchange or the trustees of the gratuity fund thereof, hereafter, for or on account of dues or assessments upon the said certificates, together with interest on each of such payments from the date thereof," was sufficient to constitute a legal charge or lien upon the plaintiff's interest in the gratuity fund to the extent of the sum paid out by the defendant to the Produce Exchange upon the faith of the instrument and for the purpose of keeping the plaintiff's interest in that fund alive. In speaking of the second assignment or transfer, made on April 5, 1901, the court said:

"As we regard this first instrument as amply sufficient of itself to charge the plaintiff's interest in the gratuity fund with the sum thereafter paid out by the defendant to keep it alive, the circumstances under which the second assignment was obtained become wholly immaterial. Upon the evidence in the two cases the defendant was entitled to receive out of the plaintiff's interest in the gratuity fund the aggregate of all the amounts paid by him after the execution of the assignment on account of dues upon Holmes' certificate of membership and the assessments against Holmes on account of the gratuity fund with interest upon such payments from the dates at which they were made. He was not entitled to receive anything on account of the debt of Holmes paid to the Oriental Bank or interest thereon. The whole of the amount payable out of the gratuity fund on account of Holmes' membership was payable to the plaintiff less the sum heretofore mentioned as due to the defendant on account of the amounts paid by him to save the plaintiff's interest."

The effect of this decision is that the sole interest of the defendant in the fund was the repayment to him of the amounts that he had paid subsequent to the execution of the first assignment to preserve to the beneficiaries the amount of the fund payable by the New York Produce Exchange upon the death of Holmes, a member of the Exchange. While it may be conceded that after the death of her father the plaintiff, being entitled to the gratuity, would have the right to transfer that gratuity, as she would have the right to transfer any other chose in action, an instrument executed merely to carry out the former agreement, with no intention to make a new and independent assignment of the fund, and based upon a statement or representation by the person to whom the assignment was made that the assignment was to carry out the former instrument, conferred no new rights upon the assignee, and, without a new and independent consideration, would not affect the ownership of the fund. The situation as it existed when this second instrument was executed was that the defendant held an instrument executed by the plaintiff which assigned to him the plaintiff's right to the fund when it became payable, to secure the repayment of the amount that he had paid to protect the fund.

The plaintiff's father died on March 31, 1901, leaving him surviving the plaintiff, his only child and next of kin; his wife having died before him. The referee found that on the evening of April 4, 1901, the day after the burial of the plaintiff's father, the defendant called upon her to obtain her signature to a paper which he said the Produce Exchange had requested him to get her to sign to confirm the former

one, that of April 13, 1891, which paper then sought to be obtained was in terms an assignment to him of moneys due or to grow due to her from the Produce Exchange by reason of her being the daughter of John A. Holmes, as might be sufficient to pay the defendant the sum of $3,614 mentioned in the previous assignment of April 13, 1891, with interest from that date, and the further sum of $2,014 for dues and assessments alleged to have been paid by the said defendant for said Holmes, with interest on each payment from the date when it was made; that the defendant said to the plaintiff in substance that the money was justly due to him, and that he had a right to it, although he then knew that the assignment executed by the plaintiff and her mother was not effectual to enable him to collect the money due to her from the Exchange or the gratuity fund; that the plaintiff wanted the defendant to allow her out of the first moneys paid by the Exchange on account of the gratuity fund a sum sufficient to pay the expenses of her father's funeral and sickness, but this he was unwilling to do, fearful that it would come out of what he claimed to be due to him; that the plaintiff declined at that time to sign the paper which was left with her. The referee further found that the plaintiff was not indebted to the defendant in any sum whatsoever; that the defendant had no legal claim against her, but of these by-laws she was ignorant; that she believed that the defendant had a right to claim and take the money under the assignment of April 13, 1891, and that she could not withhold it from him; that the defendant knew that she so believed and encouraged her in the belief; that he concealed from her his true reason for urging her to sign the new assignment, which was that he might obtain by it payment of his alleged loans to her father out of the gratuity belonging to her; that the plaintiff took the paper to a Mr. Weiffenbach, an attorney at law, who was a friend with whom she had long been acquainted, having been previously employed by him, and asked him to get the defendant to allow her out of the money a sum sufficient to pay the expenses of the funeral and doctor's bills; that the defendant consented to allow her $500 for those purposes; that the proposed assignment was then changed by the insertion of a provision that out of the first installment of the gratuity paid by the Exchange the plaintiff should receive the sum of $500, and in that form it was signed by the plaintiff and delivered to the defendant on or about the day of its date; that on or about April 19, 1901, the plaintiff and the defendant met at the office of the Produce Exchange; that she received a check of the treasurer of the Exchange for $500—a second check for $2,500 was drawn by the treasurer of the Exchange to the order of Isabel A. Holmes and E. B. Seaman, assignee, which latter check was indorsed by the plaintiff and delivered to the defendant— that the representations and conduct of the defendant were calculated to and did mislead and deceive the plaintiff and induced her to execute the assignment aforesaid; that after the payment of the said $3,000 there remained due to the plaintiff from the Produce Exchange or the gratuity fund on account of said gratuity the sum of about $6,823.34, and this sum was paid into court by the Produce Exchange and is in court subject to the final disposition of this action.

I think it clear that this second assignment was ineffectual to trans-

fer to the defendant any right that the plaintiff had at the time it was executed to this gratuity fund, which, under the by-laws of the Produce Exchange, was payable only to the widow or children of the deceased member, and which was not then chargeable with any indebtedness of the plaintiff's father to the defendant. The plaintiff had no intention to do any more than to carry into effect the former agreement executed by her and her mother and which was valid to the extent of securing the defendant the repayment of such sums as he had paid subsequent to its execution to keep the membership of the plaintiff's father in the Exchange alive, so that the fund would be preserved. There was no consideration for the assignment. The defendant paid to the plaintiff no money. He simply consented to allow her to receive a portion of the money which belonged to her and which was payable to her by the Exchange. Legally the defendant was entitled to be paid out of the fund the amount which he was paid subsequent to the execution of the first agreement; but whether he received that out of the first or second payment was entirely immaterial. He was sure of his money and sure of interest on it until it was paid, as the fund largely exceeded the amount to which he was legally entitled. His consent, therefore, that the plaintiff should be paid $500 out of the first payment of $3,000 that was made by the Exchange was to allow her to receive what belonged to her and for which the defendant gave up no substantial right.

We think, therefore, that the defendant was entitled to receive the amount that he had paid after the execution of the first agreement, with interest to the date of the judgment. The referee finds in his report that:

"The indebtedness to said defendant for the amount paid by him for dues to the Exchange and assessments on account of the gratuity fund subsequent to April 13, 1891, with legal interest thereon, was the sum of $2,544.99."

He received from the treasurer of the Exchange on or about April 19, 1901, the sum of $2,500, which, upon this report, entitles him to a further payment of $44.99 to be paid out of the balance of the gratuity fund, which has been paid into court to await the determination of this action, and for that amount, with interest to the date of payment, the referee awarded judgment to the defendant, the balance of the gratuity fund remaining after such payment to be paid to the plaintiff.

In separate findings of fact submitted by the defendant, and which were marked as found by the referee, there is the following:

"After receiving the payment of $2,500 from the trustees of the gratuity fund, the amount remaining due and payable to the defendant on account of his advance with interest to April 22, 1901, was $5,848.81. This included a balance over and above said $2,500 or $273.54 for dues and assessments paid by the defendant after the execution of the first assignment."

The defendant claims that in any event the judgment should be modified by awarding him this sum of $273.54 instead of the sum of $44.99 awarded by the judgment. These findings seem to be inconsistent. In a letter from the defendant to the plaintiff's attorney, dated January 8, 1902, there is inclosed a statement of the amounts actually paid by the defendant after the execution of the first agreement, from which it appears that the defendant actually paid $2,044, and the interest on

that to the date of the statement appears to be $613.13. From these statements it would appear that there was due to the defendant in January, 1902, the sum of $2,657.13. It also appeared that the defendant sold the membership seat in the Exchange, for which he received $120, and this amount should also be charged against the defendant. Therefore the finding of the referee that the amount due defendant at the time of the receipt of the $2,500 was $44.99 seems to be in excess of what the defendant was entitled to receive according to his own statement. The finding at the request of the defendant, therefore, that there was due the defendant on April 22, 1901, over and above the $2,500, the sum of $273.54 was not sustained by the evidence, and it should therefore be disregarded.

It may also be said that this tenth proposed finding of fact, although marked "Found" by the referee, was not incorporated in his report and cannot therefore be regarded as a finding of fact which this court on appeal from the judgment can consider. Elterman v. Hyman (decided herewith) 102 N. Y. Supp. 613.

It follows that the judgment appealed from should be affirmed, with costs. All concur.