(Supreme Court, Special Term, New York County.   December 30, 1911.)

1. TRUSTS (§ 59*)—EXPRESS TRUST—REVOCATION—PERSONS ENTITLED TO OBJECT—"ESTATE IN EXPECTANCY"—"BENEFICIALLY INTERESTED."

Personal Property Law (Consol. Laws 1909, c. 41) § 23, provides that, upon the written consent of all the persons beneficially interested in a trust in personal property, the creator of the trust may revoke it. Section 11 provides that the same rule which regulates future estates in land is applicable to future estates in personal property. Real Property Law (Consol. Laws 1909, c. 50) §§ 35, 36, provide that an estate in which the right of possession is postponed to a future time is an estate in expectancy, and that all expectant estates except such as are enumerated in this article are abolished, and expectant estates are divided into future estates and reversions. Section 59 provides that an expectant estate is descendible, devisable, and alienable in the same manner as an estate in possession. A trust deed provided that the settlor should receive the income from the trust fund for life, and, if he left surviving a wife and children, the fund should be divided equally between them, but that, if the settlor died without wife or children or issue of children surviving, the income should be paid to the settlor's mother and brother during her life and upon her death the whole to the brother, or, if either the mother or brother died before the death of the settlor, the income should be paid to the survivor during life, and upon termination of the trust the trustee should pay over the principal fund to such persons as at said time might be the settlor's next of kin on his father's side. *Held*, that a brother and nephew of the settlor's deceased father did not, during the lifetime of the settlor, possess an estate in "expectancy" within the meaning of section 59, since it was uncertain that they were the persons who would ultimately take the estate, nor were they "beneficially interested" in the estate within the meaning of section 23, as their interest was not devisable, descendible, or alienable, and hence the settlor could revoke the trust without their consent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. §§ 78–81; Dec. Dig. § 59.*

For other definitions, see Words and Phrases, vol. 1, p. 749; vol. 3, p. 2588; vol. 8, p. 7656.]

2. TRUSTS (§ 147*)—ESTATE OF BENEFICIARY.

The interest of a beneficiary under a trust is descendible, devisable, and alienable in the same manner as legal estates.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 192; Dec. Dig. § 147.*]

3. TRUSTS (§ 124*)—CONSTRUCTION—WORDS OF SURVIVORSHIP.

Words of survivorship in a deed creating a trust in personalty refer to the period of division and enjoyment, unless the instrument shows a contrary intent.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 167; Dec. Dig. § 124.*]

4. REMAINDERS (§ 1*)—"ESTATE IN EXPECTANCY"—"EXPECTANCY."
Any interest in remainder, whether absolutely vested or vested subject to being divested, or contingent, is an "expectancy."

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, p. 2588; vol. 8, p. 7656.*]

5. REMAINDERS (§ 14*)—ESTATES ALIENABLE—CONTINGENT REMAINDERS.
A contingent remainder is alienable if the contingency is not with respect to the person.

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 10; Dec. Dig. § 14.*]

6. TRUSTS (§ 124*)—TRUST DEEDS—PERSONS TAKING.
Under a trust deed providing that upon the termination of the life estates in the contingencies stated the trust fund should go to the settlor's next of kin on his father's side, those ultimately taking are. the next of kin in his paternal line "at the time of distribution" according to statute, so that there can be no "next of kin" during settlor's lifetime.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 167; Dec. Dig. § 124.*]

7. REMAINDERS (§ 1*)—"EXPECTANT ESTATE."
Anticipations not coupled with a legal interest are not deemed "expectant estates."

[Ed. Note.—For other cases, see Remainders, Cent. Dig. § 1; Dec. Dig. § 1.*

For other definitions, see Words and Phrases, vol. 3, p. 2588.]

Action by Henry De Groot Robinson against the New York Life Insurance & Trust Company and others. On motion for judgment on demurrer to the complaint. Demurrer overruled, and judgment rendered for plaintiff.

See, also, 143 App. Div. 925, 128 N. Y. Supp. 1143.

Cleary, Averill & Scott (James A. Gray, of counsel), for plaintiff.
William T. Emmet, for defendant New York Life Ins. & Trust Co.
Wilmer, Canfield & Stone, for defendants Thomas H. Robinson and Charles L. F. Robinson. ,

SEABURY, J. [1] This motion presents for determination an issue of law. The action is brought to cancel a deed of trust of personal property alleged to have been revoked under section 23 of the Personal Property Law (Consol. Laws 1909, c. 41).

The deed of trust provides, in substance: That the plaintiff, Henry De Groot Robinson, the creator thereof, shall receive the income therefrom during his life. That if plaintiff leaves him surviving a wife or a wife and children, or issue of a deceased child or children, the fund shall be divided into equal shares, one for a possible wife if surviving, and one for each of the children or issue of deceased child or children, said shares to be transferred and assigned to them respectively, except that, if the wife be a person in being at the date of the trust deed, then her share to be held in trust for her during her life. That if plaintiff dies leaving neither wife nor children, nor issue of deceased children surviving, but is survived by his mother, Hannah

Robinson, and his brother, Francis De Groot Robinson, the income of the fund shall be paid, one-half to his mother and one-half to his said brother during the life of his mother, and upon the death of his mother the whole to his said brother. That if plaintiff dies leaving neither wife nor children, nor issue of deceased children him surviving, but survived by his said mother or brother, but not by both, the whole of the income shall be paid to him or her as the case may be during life. That upon the termination of the trust, if none of the prior provisions are applicable, the trustee is to pay over and distribute the principal fund, if there be one, among such persons as at said time may be plaintiff's next of kin on his father's side.

At the present time the plaintiff and his brother are unmarried and without children, and the plaintiff's mother is still living. The defendant Thomas H. Robinson is a brother of the plaintiff's deceased father, and the defendant Charles L. F. Robinson is a nephew of plaintiff's deceased father. These two defendants are conceded to be the only persons in being who, if the intervening life estates were to cease eo instanti, would answer the description of next of kin of the settlor on his father's side.

The mother and brother of the settlor have signed a consent in writing to the revocation of the deed of trust. The defendants Thomas H. Robinson and Charles L. F. Robinson were not originally parties to this suit, but upon their own motion they were made parties. These defendants have demurred to the complaint on the ground that it fails to state facts sufficient to constitute a cause of action. The said defendants who now demur to the complaint contend that they are persons "beneficially interested" in the trust, and that the said trust may not be revoked without their consent. This contention rests upon section 23 of the Personal Property Law, which provides as follows:

"Revocation of trusts upon consent of all persons interested.—Upon the written consent of all the persons beneficially interested in a trust in personal property or any part thereof heretofore or hereafter created, the creator of such trust may revoke the same as to the whole or such part thereof, and thereupon the estate of the trustee shall cease in the whole or such part thereof."

This section was added to the law by chapter 247 of the Laws of 1909 and took effect April 23, 1909.

The proposition to be determined upon this demurrer is whether the demurring defendants are "persons beneficially interested" within the meaning of those words as used in section 23 of the Personal Property Law.

[2] Formerly a person having a right to the beneficial enjoyment of property of which the legal title was in another was deemed to be the owner of an equitable estate. The only manner in which the rights of an equitable owner could be enforced was by means of a subpœna in chancery. Coke on Litt. 272b. The Statute of Uses (27 Henry VIII, c. 10) was designed to unite in the cestui que use the legal and equitable estates. This purpose was defeated by the construction which the courts gave to that statute, and as a result of judicial interpretation the old "use" emerged under the new name of "trust" purged

of its objectionable features. Acting upon the maxim that "equity follows the law," the interest of the beneficiary of the trust was early held by the courts to be descendible, devisable, and alienable in the same manner as legal estates. Lewin on Trusts (11th Ed.) p. 8; Reeves on Real Property, p. 415. Whether or not a settlor could revoke a voluntary trust at pleasure where no power of revocation was reserved has often proved a perplexing question. The early rule upheld the integrity of the deed of trust with great rigidity, but in latter times this rule became somewhat more flexible, and whether a deed of trust was revocable was held to depend upon the intent of the settlor to reserve a power of revocation. Unless such an intent was expressed or could be implied, the deed of trust was irrevocable. Garnsey v. Mundy, 24 N. J. Eq. 243; 1 Perry on Trusts, § 104, and notes.

This rule was not inconsistent with a recognition of the right of those representing every estate in the trust, assuming that they were all competent to act, to revoke the trust at their pleasure. Such was the rule in this state prior to the adoption of the Revised Statutes in 1830. The Statute of Uses and Trusts (4 R. S. [8th Ed.] p. 2439), in sections 62 to 65, prohibited a beneficiary under the trust, other than a trust for the payment of a sum in gross, from assigning his interest, and declared that every sale, conveyance, or other act of the trustees in contravention of the trust shall be absolutely void. This statute was several times interpreted by the courts. Wood v. Wood, 5 Paige, 596, 28 Am. Dec. 451; Douglas v. Cruger, 80 N. Y. 19; Lent v. Howard, 89 N. Y. 169. In Cuthbert v. Chauvet, 136 N. Y. 326, 32 N. E. 1088, 18 L. R. A. 745, these cases were reviewed by Judge Maynard, who quotes with approval the language of Judge Earl in Douglas v. Cruger, supra, where he said:

'The Supreme Court has not the power to destroy a valid trust. The purpose of the statute was to make these trust estates and trust interests indestructible and absolutely inalienable during the existence of the trust, and if they could be rendered alienable by order of the court the whole scheme of the statute would be greatly impaired and its purpose thwarted. The statute does not confer upon the Supreme Court power to authorize such conveyances."

The Legislature amended the Revised Statutes by chapter 452 of the Laws of 1893 so as to provide in substance that: ·

"Whenever a beneficiary of a trust for the receipt of rents and profits became entitled to the next estate in remainder he might call for a conveyance and put an end to the trust, and this provision was finally incorporated in the Real Property Law, and was thereafter, by section 3 of the old Personal Property Law, explicitly extended to trusts of personalty." Fowler's Personal Property Law, p. 7.

The act of 1893 continued in existence until October 1, 1897, when it was repealed by chapter 417 of the Laws of 1897. This act of 1897 was amended by chapter 87 of the Laws of 1903, which, as again amended by chapter 327 of the Laws of 1911, is in its present form incorporated in section 15 of the Personal Property Law. After reviewing these statutory changes, Surrogate Fowler, in his valuable book on the Personal Property Law, says:

"The interests of a beneficiary in a trust to receive and apply the income of personal property have, since the passage of chapter 87 of the Laws of 1903, again become as inalienable as they were held to be under the Revised Statutes. * * * This section is now an explicit restoration of the former law of this state making certain trust interests inalienable, as we have before noticed at length. But this section, it will be observed, applies only to trusts to receive and apply income to the use of beneficiaries specified and not to other trusts." Page 89.

From this review it becomes evident that, except in the special cases referred to, an active trust was, before the enactment of section 23 of the Personal Property Law, indestructible, and the interests of the beneficiaries under such trusts were inalienable.

The purpose and effect of the adoption of section 23 of the Personal Property Law is well set forth in Hoskin v. L. I. Loan & Trust Co., 139 App. Div. 258, 123 N. Y. Supp. 994. In that case, Mr. Justice Burr said:

"The difficulty which has existed in the way of the destruction of an active trust arose from the provisions of the law which prohibit the person entitled to the beneficial interest from assigning or in any manner disposing of the same, or the trustee from doing anything in contravention of the trust. * * * The beneficiary of the trust, the trustee, the owner of the reversion or remainder, and, in some cases, the creator thereof, represent every possible interest, legal or equitable, in the trust property. The creator of the trust and the person entitled to the reversion or the remainder, if in other respects competent to act, could always release or convey all or any rights which they might have in the subject-matter of the trust. The effect of this act is to remove from the beneficiary and the trustee the prohibition which has heretofore existed, and make them as free to act in regard thereto as any other person. When, therefore, the necessary conveyances or releases are executed, the trust terminates as matter of law."

Section 23 of the Personal Property Law neither enlarges nor restricts the class of those who answer the description of persons beneficially interested in a trust estate. Whatever beneficial interest one possessed in a trust estate before the enactment of section 23 still continues in precisely the same nature, quality, and degree as before.

[3] By virtue of the statutes of this state the same rules which regulate future estates in land are made applicable to the creation, and limitation of future estates in personal property. Personal Property Law, § 11; Nat. Park Bank v. Billings, 129 N. Y. Supp. 846. With respect to their time of enjoyment, estates are divided into estates in possession and in expectancy. "Estates in expectancy" consist of future estates and estates in reversions. Real Property Law (Consol. Laws 1909, c. 50) §§ 35, 36. "Remainders" are future estates and are either vested or contingent. Certainly these demurring defendants can claim no estate in possession. In order to ascertain the owners of the estate in remainder under this trust deed, we must first determine the period of time, with reference to which the owner or owners are to be ascertained. It is a well-settled rule of construction that words of survivorship used in deeds or bequests of personal property refer to the period of division and enjoyment unless there is an intention to the contrary. The deed of trust under consideration expresses no intention to the contrary, and there is no circumstance suggested upon which it would be possible to predicate such an intent

on the part of the settlor. Jarman on Wills, pp. 1533–1549; Cripps v. Wolcott, 4 Madd. 11; Teed v. Morton, 60 N. Y. 506; Goebel v. Wolf, 113 N. Y. 405,.412, 21 N. E. 388, 10 Am. St. Rep. 464; Matter of Baer, 147 N. Y. 348, 41 N. E. 702.

[4] Under this rule of construction the trust fund is ultimately to ,be distributed to those answering the description of next of kin of the settlor on his father's side, who shall be in existence at the termination of the trust. There is no necessity for attempting to classify with precision the exact .interest which these demurring defendants claim to possess. Any interest in remainder, whether vested or vested subject to its being divested or contingent, is nevertheless an expectancy.

It is provided by statute in this state that:

"An expectant estate is descendible, devisable and alienable in the same manner as an estate in possession." Real Property Law, § 59.

A person having an expectant estate in a trust fund which is .descendible, devisable, or alienable is certainly a person beneficially interested. The converse of this proposition seems to be equally plain. One whose .interest is not descendible, devisable, or alienable cannot be said to be beneficially interested. If the interest which one has in a trust estate possesses none of these attributes, it cannot be said to be a beneficial interest.

All expectant estates except those defined in the statute are abolished (section 36, Real Property Law), and those defined in the statute are descendible, devisable, and alienable. If, therefore, one possesses an interest which lacks these .attributes of descendibility, devisability, or alienability, it is not such an interest as is recognized by our law and could not have been within the contemplation of the Legislature in making section 23 of the Personal Property Law applicable to "persons beneficially interested." I think that this rule prescribes a rational test by.which we are to determine who are and who are not "persons beneficially interested" in a trust estate, as those words are used in section 23 of the Personal Property Law.

[5] The language of the statute declaring expectant estates to be descendible, devisable, and alienable is comprehensive; but it still leaves open for determination the question as to what are expectant estates and what interests are descendible, devisable, and alienable. Upington v. Corrigan, 151 N. Y. 143, 148, 45 N. E. 359, 37 L. R. A. 794; Fowler's Real Property Law, p. 215..

A remainder is said to be contingent while the person to whom, or the event on which, it is limited to take effect, remains uncertain. Real Property Law, § 40; Hennessy v. Patterson, 85 N. Y. 100. Under the early common law such remainders were assignable to strangers, whether by way of fines or common recoveries only on the principle of estoppel. Cruise Dig. tit. 16, c. 8, §§ 20, 21.

"For a long time," says Mr. Washburn, "a contingent remainder was not supposed to be the subject of alienation, because it was, rather a possibility than an estate, like the possibility of an heir at law, for instance, having the estate when his ancestor shall have died. But it is now settled that where the contingency· upon which the remainder is to vest is *not in respect to the person,* but the event, where the person is ascertained who is to take if the

event happens, the remainder may be granted or devised, and the grantee or devisee will come into the place of the grantor or devisor, with his chance of having the estate. *But if the contingency is in the person who is to take, as where the remainder is limited to the heirs of one now alive, there is no one who can make an effectual grant or devise of the remainder.*" 2 Washburn on Real Property (6th Ed.) § 1557, p. 527. See, also, Kenyon v. See, 94 N. Y. 563.

Commenting upon the statutory provision which declares expectant estates to be descendible, devisable, and alienable, Prof. Reeves says:

"But these statutes must always be understood as meaning simply that such interests may be disposed of when the uncertainty is as to the *event*, and not as to the *person*. A remainder to a person not in esse cannot be transferred, because there is no one in being by whom it is owned." Vol. 2, § 904, Real Property.

In a note upon the New York statute declaring expectant estates alienable, he says:

"This must be understood with the qualification explained—the owner must be in being and ascertained, and he who acquires the remainder takes it subject to the contingency."

Mr. Fearne, in his work on Contingent Remainders, enumerates four classes of contingent remainders, and the fourth class named exists "where the person to whom the remainder is limited is not yet ascertained or not yet in being." 4 Amer. Ed. p. 4. Mr. Cruise, in adopting Mr. Fearne's classification, says:

"The fourth sort of contingent remainders is where it is limited to a person not ascertained or not in being at the time when such limitation is made. Thus, if a lease be made to one for life, remainder to the right heirs of J. S.; now, there can be no such persons as the right heirs of J. S. till his death, for 'nemo est hæres viventis'; and J. S. may not die till after the determination of the particular estate; therefore such remainder is contingent." 2 Cruise Dig. (Huntington Ed.) tit. 16, c. 1, §§ 19, 20.

Mr. Washburn says:

"The fourth class of contingent remainders is where the contingency depends upon the uncertainty of the person who is to take the remainder because he is either not in being or not ascertained at the time the limitation is made. An example of this kind would be that of an estate limited to one for life, remainder to the oldest son of J. S., who has none at the time of the limitation made, or remainder to the heirs of J. S., who is living at the time. So a grant to A. and B. for life, remainder to the survivor, would be of this class. In all these cases there is no means of knowing when the limitation is made, who, if any one, will be entitled to the remainder when the particular estate shall determine." 2 Washburn Real Property Law (6th Ed.) § 1562, p. 531.

In Broom's Legal Maxims (4th Ed.) p. 394, it is said:

"When property is settled in trust in remainder for the persons who should be the next of kin of the tenant for life at her death, the presumptive next of kin are not necessary parties to a suit instituted for the execution of the trusts during the lifetime of the tenant for life, for it is uncertain who will be the next of kin of the wife at her death. To hold that those who are at present her next of kin are necessary parties seems inconsistent with the rule nemo est hæres viventis.'"

In support of this statement, Mr. Broom cites the case of Fowler v. James, 1 Phill. 803, decided by Lord Cottenham (also reported in 47 English Reports, full reprint, p. 862, and 1 Coop. T. Cott. 290).

[6] Under the deed of trust the trust fund is ultimately to go, after the termination of the preceding life estates, to the next of kin of the settlor on his father's side. This gift being to a class and coupled with words of survivorship, refers not to the time when the deed of trust was made or to the present time, but to the time of the distribution. If there is now no one in existence and ascertainable answering to the class to which the deed of trust provides that the fund shall ultimately go, then there is no one of whom it may be said that he has a beneficial interest in the trust fund. The deed of trust provides that the trust fund shall ultimately go to the next of kin of the settlor on his father's side. The settlor is still alive and there can be no next of kin of a living person. The words "next of kin on his father's side" mean those who shall, at the date of distribution, be next of kin of the settlor on his father's side, according to the statute of distribution. Slosson v. Lynch, 28 How. Prac. 417–419; Heath v. Hewitt, 127 N. Y. 171, 27 N. E. 959, 13 L. R. A. 46, 24 Am. St. Rep. 438.

In Gundry v. Pinniger, 7 Eng. Law & Eq. 148, 151, 14 Beav. 94, 51 Eng. Reports, full reprint, 222, the remainder was "to C. D. if living, but if dead to his next of kin ex parte materna." Sir John Romilly, the Master of the Rolls, said:

"The rule has very properly been admitted to be that, in ordinary cases of a gift to the next of kin of a person, such a class is to be ascertained at the death of the person himself, unless there be some special words to show that such a construction cannot properly apply. I never accurately understood how the 'next of kin' of a person could properly be ascertained by any other period than at the death of such person himself. The words 'next of kin' have a distinct legal meaning. They naturally point to persons to be ascertained at a fixed period, viz., at the death of the person whose next of kin they are, and not to different persons, existing at different periods. When, therefore, you speak of the next of kin of a person, meaning that they should be ascertained at a period when he did not die, you really are giving no sensible meaning to the expression, unless you designate the class as the persons who *would have been* the next of kin of a person if he had died at a period other than when he did actually die."

This decision was affirmed on appeal (1 De G. M. & G., 504, 42 Eng. Rep., full reprint, 647); Lord Cranworth saying:

"My conclusion * * * is that the meaning of the 'next of kin' is next of kin at the death of the person whose next of kin is spoken of."

Inasmuch as the estate in remainder is to go to the settlor's next of kin on his father's side, how can it now be averred that these demurring defendants are such next of kin?

The settlor is still alive, and, while living, he can have no next of kin. Here the remainder is not to these demurring defendants by name. The settlor gave nothing to them. His gift was ultimately to go to a class. Whether these demurring defendants will be within that class at the death of the settlor or at the time of distribution is entirely speculative. Any interest which these demurring defendants may have would be divested by their death prior to the death of the life beneficiary, the settlor's brother. If the settlor shall leave him surviving any child or descendant of such child, the demurring defendants will be excluded from the class of next of kin. If the set-

tlor dies without issue, and the brother of the settlor, who is a life beneficiary, shall have issue, such issue would answer the description of next of kin to the settlor on his father's side to the exclusion of these demurring defendants. The uncertainty which has been pointed out is not only as to event, but relates to the person or persons to whom the trust estate will ultimately go. The gift of the ultimate estate is to a class the members of which at present have no existence, and cannot, in the nature of things, have any existence until the death of the settlor.

[7] Under these circumstances it seems clear to me that the interest of these defendants, whatever it may be, is not descendible, devisable, or alienable. They may enjoy the naked possibility that at the death of the settlor or the time of distribution they may answer the description of the class to which the trust fund is to be given, but this is no more than a mere chance which may never ripen into anything of substance. Anticipations and hopes, when not coupled with a legal interest, are not deemed to be "expectant estates." Fowler's Real Property Law, p. 215.

I regard the case of Gilliam v. Guar. Trust Co., 111 App. Div. 656, 97 N. Y. Supp. 758, as furnishing strong support for the views herein expressed. In that case the deed of trust provided that after the death of the beneficiary the corpus of the estate shall go "to her heirs at law." It was held that, although the brothers of the cestui que trust may be her heirs at the time of her death, their rights are subject to be divested if at the death of said cestui que trust she leaves other heirs entitled to take in preference to said brothers under the statute of descent as so existing at her death, and that the cestui que trust having adopted a child, such adopted child was entitled to inherit by statute to the exclusion of the brothers. In that case Mr. Justice Clarke, writing for the majority of the Appellate Division, said:

"If we assume what does not appear, that at the time of the execution of this deed these three defendants (the brothers) would have been the heirs of the cestui que trust if her death had presently occurred, their right to take upon that event was undoubtedly subject to be divested by her marriage and the birth of a child. The share of each one was liable to be divested by his death before the cestui que trust. Consequently their whole estate—whatever it was—was liable to be divested by the death of all three before Frances Dyett's death (the cestui que trust). That such an estate is not devisable, descendible, or alienable is settled."

After quoting with approval the opinion of Mr. Justice Rumsey in Paget v. Melcher, 26 App. Div. 17, 49 N. Y. Supp. 922, approved in 156 N. Y. 404, 51 N. E. 24, Mr. Justice Clarke says:

"So that whatever this right of these defendants may be called, vested, subject to be divested, or contingent, it was liable to be defeated if at the death of the cestui que trust they were not then her heirs. Their rights depended upon the statute of descent. Under certain contingencies they would be the heirs at law. That right was subject to be destroyed by the birth of lineal descendants who, under the same statute, would then oust them. That statute was subject to amendment. It must be assumed that the grantor knew the law, and that, when she said 'after her decease to her heirs at law,' she said it knowing that the Legislature had the power to declare who the heirs at law were. The statute was amended by providing that adopted

children should inherit, and as this was an amendment in effect of the same statute under which defendants claim, * * * it seems to me their right was destroyed or divested by the adoption of a child as it would have been by the birth of a child."

In writing, for the Court of Appeals in this case Judge Hiscock said:

"I do not regard it essential to consider in detail the arguments which have been addressed to us for the purpose of determining whether the rights of appellants (the brothers) under the clause of final disposition in the deed at the time of its execution were in the nature of a contingent remainder or of a vested remainder, which would be divested by death before the death of the life beneficiary or which would open to admit other heirs arising before that event. Whatever disagreement there might be about the technical definition to be given to appellants' position as the only heirs at law of Mrs. Dyett when the deed was executed, I regard the law as well settled which, so far as concerns the practical question in the case, governs the construction of the clause of remainder and *fixes the time as of which the heirs at law under it are to be ascertained.*" 186 N. Y. 127, 78 N. E. 697, 116 Am. St. Rep. 536.

Within the meaning of these authorities I think it clear that the person or persons who will answer the description of next of kin to the settlor on his father's side are at present uncertain and must continue to be uncertain until the time of distribution, and until that time it can never be known to whom the remainder of this trust estate will go. Heath v. Hewitt, 127 N. Y. 171, 27 N. E. 959, 13 L. R. A. 46, 24 Am. St. Rep. 438. The owner of such remainder not being capable of ascertainment, and perhaps not now in being, has no interest which is descendible, devisable, or alienable. The claim of the demurring defendants that they are the next of kin of the settlor on his father's side rests, in view of the fact that the settlor is now living, entirely upon assumption. That this assumption is ill founded has been sufficiently demonstrated.

It follows that these demurring defendants have no interest which is descendible, devisable, or alienable, and therefore are not "persons beneficially interested" in the deed of trust, and that such deed was revoked and canceled by the written consent of the settlor and the only other persons who were "beneficially interested" in it within the meaning of those words as used in section 23 of the Personal Property Law.

The demurrers should be overruled, with costs, and, as it does not appear that leave to plead over would be of any avail to the demurring defendants, judgment is awarded in favor of the plaintiff.