334

In the Matter of the Application of DELIA GALLAGHER, Formerly DELIA McGINLY, to Render and Settle Her Accounts as Trustee under the Will of BERNARD McGEEHIN, Deceased.

Surrogate's Court, Kings County, June 12, 1929.

*David Joyce*, for the petitioner.

*Edward J. Flanagan*, for the objectants.

*John H. Schmid*, special guardian.

WINGATE, S. The questions here presented arise upon the petition of Delia Gallagher, formerly Delia McGinly, to render and settle her intermediate account as " trustee " under the will of Bernard McGeehin, deceased. She concedes an indebtedness, in the sum of $402.46, from the funds in her hands to Mary Rogers and Lizzie McGowan, as executrices of William McGowan, deceased. They claim a further interest in one-third of the net rentals derived from premises 42 Sterling Place, Brooklyn. This sum, amounting to $1,355.66, is the sole basis of objection raised against the account.

Mary McGowan died intestate in February, 1917, seized, *inter alia,* of the premises 42 Sterling Place, Brooklyn, N. Y. She was survived by her husband, William McGowan, and by three infant sons, Bernard, William, Jr., and James.

By virtue of the provisions of section 84 of the Decedent Estate Law, each of the three sons inherited an undivided one-third interest in this property, subject to a life estate in their surviving parent William McGowan.

On May 25, 1918, the father, William McGowan, conveyed to Bernard McGeehin, the present testator, and the grandfather of the infants, all of his right, title and interest in the real property of which his wife had died seized and in which he held a life estate by courtesy as a result of her intestacy. After a specific description of the several parcels, his interest in which he thus conveyed, there appears the following wording, which has given rise to the present controversy: " Together with all contingent or future interest or estate which I may acquire in the premises described herein, or right to the same, by reason of the death of the owners of the remainder of the estate in said premises."

This deed was duly recorded on May 25, 1918, in the office of the register of Kings county in liber 3714 of Conveyances at page 358. No direct evidence has been given respecting the consideration received by William McGowan for this conveyance, but from the fact that it bears a United States internal revenue stamp of $1.50, a presumption is created that he received approximately $3,000.

Bernard McGeehin, the grantee under this conveyance, died October 10, 1919, specifically devising certain real property to these same infants, the children of Mary McGowan and William McGowan, and making them his residuary legatees, in equal shares. The management of the realty was intrusted to the accountant herein by a *quasi* trust provision in the will.

The rights of the several infants in the Sterling Place property, as of the time immediately succeeding Bernard McGeehin's death, were that each held an undivided one-third remainder interest in the premises, subject to a life estate in their father, each potentially

owning an undivided one-third interest in this life estate and each being potentially vested with the rights of their grandfather, such as they may be found to be in their father's covenant relating to any future interest which he might acquire in the premises. These two latter interests being a part of the residue of Bernard McGeehin's estate, were, of course, subject to diminution or extinction depending on the facts respecting claims, etc., against his estate, the facts concerning which are not before the court. In consequence of the view of the law which the court adopts, it is unnecessary to determine whether the combination of these rights merged the life estate in the fee.

The next, in the chain of events, was the death, intestate, of Bernard McGowan, one of the infants, on August 10, 1922. All rents collected prior to this date were disposed of on a former intermediate accounting. Those here in question are the sums which have come into the hands of the "trustee" since the death of Bernard and prior to the death of his father, William McGowan, which occurred on June 24, 1928.

It is unquestionable that in the ordinary case William McGowan, the father, would, upon the death, intestate, of Bernard, have been vested with a life estate in the latter's realty which had come to the decedent on the part of his mother (Decedent Estate Law, § 84), and this result has been followed by the accountant in awarding to the executrices of William McGowan the sum of $402.46, which represents the income in their hands which was derived from the realty specifically devised to Bernard McGowan by Bernard McGeehin, his maternal grandfather. The accountant claims that by the additional wording in the deed of May 25, 1918, William McGowan, in effect, estopped himself to advance any such claim to any similar sums received from the realty which descended to the infant, Bernard McGowan, from his mother, Mary McGowan, while his estate contends, as the basis of its objection to the account, that no rights were conveyed by William McGowan to Bernard McGeehin by virtue of the language in the deed above quoted.

What, then, is the effect, if any, of this additional wording in the deed?

The objectors claim that it is a nullity and cite *Robinson* v. *N. Y. Life Insurance & Trust Co.* (75 Misc. 361); *Miller* v. *Emans* (19 N. Y. 384) and *Whittemore* v. *Equitable Trust Co.* (162 App. Div. 607) in support of their position. None of these cases, however, when carefully analyzed, is decisive of the question here involved. The *Robinson* and *Whittemore* cases really determined only that a contingent remainderman had no such present interest in the subject-matter of a trust *inter vivos* as to require his consent

to its revocation; while the *Miller* case decided only that a present release of a future contingent estate was not effective at common law.

If it is possible in any case for an individual to divest himself actually or potentially of future contingent rights of inheritance, it would seem that the facts here found would present such an instance. The writing containing the disputed phrase is a deed, an acknowledged instrument under seal. The presumption exists that it was given for a substantial consideration. The intention of the parties is not only not ambiguous, but extremely obvious to the effect that William McGowan was to divest himself of every possible right in or claim to the real property of which the grantee's daughter had died seized. The additional language was aimed at the very event which has since occurred, namely, any rights which might subsequently be acquired by William McGowan " by reason of the death of the owners of the remainder of the estate in said premises."

Can it be that when parties have agreed in this most solemn manner that an individual shall have no further rights in the subject-matter of the agreement, one of these parties can repudiate his undertaking and invoke the powers of a court of equitable jurisdiction to give effect to his repudiation? I think not.

The question here involved, while uncommon, is not entirely novel. A somewhat similar state of facts was presented in *Stover* v. *Eycleshimer* (46 Barb. 84; affd., 3 Keyes, 620). In that case a son, by instrument under seal, conveyed, as security for an antecedent debt, all interest which he then had " or at any time hereafter may have, or claim as heir at law, devisee, legatee or next of kin " of his father, who was then living.

The court in upholding the right of the transferee, upon the death of the father, says, in the course of an elaborate opinion (at p. 87): " As no present or immediate estate or interest became vested in Caroline M. Sherman by virtue of such an instrument, her claim can only be supported on the ground that it is to be regarded as a contract which a court of equity would enforce after the death of John P. Eycleshimer; for, until that event happened, the said Caroline M. had no interest in the estate, but simply a right under the contract. Was that such a right as a court of equity could and should protect and enforce? In Story's Eq. Jur. (Vol. 2, section 1040) the author says: ' So even the naked possibility or expectancy of an heir to his ancestor's estate may become the subject of a contract of sale or settlement, and in such case, if *made bona fide, for a valuable consideration, it will be enforced in*

*equity after the death of the ancestor*, not indeed as a trust attaching to the estate, but *as a right of contract* ' * * *."

In the instant case the rights of the parties in this connection are precisely those which would have existed had William McGowan, Sr., and Bernard McGeehin still been living. Were such the case, it is unreasonable to suppose that equity, in a suit by. the latter, would not compel the former to do any acts necessary to accomplish specific performance of his implied agreement to do anything requisite to effectuate the conveyance of his rights in this property when they matured. Such a case was presented in *Nugent* v. *Smith* (202 App. Div. 279; affd., 234 N. Y. 611) in which the court says (at p. 281): " In courts of equity contracts relating to expectancies have been long upheld. There is no question but that the expectancy of an heir in his ancestor's estate may become the subject of a contract for assignment or settlement which, after the death of the ancestor, may be enforced in equity. [Citing authorities.] Much of the apparent conflict in decisions in cases of this kind arises from a failure to distinguish between an attempt to convey or assign a present interest and a contract which, in express terms or by fair construction, is to take effect upon the happening of an event upon which the estate or interest is to vest in the party seeking to transfer the same. In one case no interest is transferred, as the subject-matter of the transfer has no existence. In the other the contract is executory to take effect when the right or interest vests in the party who contracts to transfer. * * * The performance of such contract may be enforced in equity."

As noted in the instant case, so far as concerned the possible future interest of the grantor in the property by reason of the death of his sons, the remaindermen, the obligation distinctly looked to the future. The form of the instrument is immaterial. It is to be construed as an undertaking to do all acts necessary to vest in the grantee any future rights of the grantor in the subject-matter. It was a unilateral obligation upon an executed consideration, the repudiation of which equity and good conscience will not permit. (*Matter of Stephens*, 64 N. Y. Supp. 990; *Holmes* v. *Seaman*, 117 App. Div. 381; *Matter of Eisner*, 129 Misc. 106; *Clendening* v. *Wyatt*, 54 Kans. 523; *Donough* v. *Garland*, 269 Ill. 565; 109 N. E. 1015.)

A difficulty has presented itself to counsel as to the method of operation of a result holding that this covenant of William McGeehin is operative. It is urged that since, in the absence of this clause, he would have been entitled to one-third of the rents of the Sterling Place property, these would go to his estate; that then, if effect is given to the deed, this third would ascend into the estate of

Bernard McGeehin, would be divided into thirds under the residuary clause of his will, one-ninth of the original sum thus returning to the estate of Bernard McGowan, and that this revolution would continue in ever-diminishing amounts until the vanishing point was reached.

This argument loses sight of the exact wording of the deed here in question, which covered merely the "future interest or estate * * * *in the premises* described," etc. It is unquestionably true, under the construction which is placed on the deed, that Bernard McGowan's one-third of the rents of the Sterling Place property would pass to the estate of Bernard McGeehin by reason of the provision of the deed, but upon its arrival there it would presumably be distributed as a part of the residue of that estate, subject to diminution by reason of commissions of executors and quite possibly increased by other moneys which might have come into the hands of such executors and be available for distribution. Whatever the sum which ultimately became payable to the estate of Bernard McGowan by reason of the provisions of the McGeehin residuary clause, it would not come to his estate as rental of the realty, but as a residuary distribution, and the language of the conveyance cannot, it is believed, be reasonably construed to cover any payments so received, even though their ultimate source, in whole or in part, may have been the realty in question. Any sums thus coming into the estate of Bernard McGowan would, of course, be personalty and, therefore, be distributable in accordance with the provisions of section 98 of the Decedent Estate Law.

Submit decision and decree, on notice, in accordance with this opinion.