### 67982. GIBSON et al. v. DISMUKE.

BIRDSONG, Judge.

R. T. Dismuke sued John Gibson and Dan Gibson for $11,000, with interest, based on a contract by which Dismuke, in 1975, sold certain real estate to the Gibson brothers for $154,000, with the proviso that if John and Dan Gibson re-sold the property within five years for more than $154,000, they would pay Dismuke any such additional sum, not to exceed $11,000.

The evidence disclosed that the property, a Pic 'N Save store, had been appraised at $255,000. Dismuke sold it to the Gibsons for $154,000, primarily because of an encumbering lease. Four months after Dismuke sold the store to the Gibsons, a deed was executed by Dan Gibson and John Gibson conveying their interest in the store to a corporation named Legar, Inc. The Georgia real estate transfer tax declaration filed with the deed showed a consideration or value of $208,585, upon which $64.60 transfer tax was paid based on the $64,585 difference between $208,585 and an encumbrance of $144,000. (See Code Ann. § 92-801 et seq., 1974 ed.; OCGA § 48-6-1 et seq.) The amount of $208,585 was the appraised tax value.

The defendants Gibson contended that their deed to "Legar, Inc." was an error, because the "sale" was really only a transfer by Dan Gibson of his interest in the store to John Gibson and G. W. Ewalt in exchange for their assumption of his indebtedness. A "corrective deed" transferring the property from John Gibson and Dan Gibson to John Gibson and G. W. Ewalt was prepared but never filed. This "error" arose because the Pic 'N Save exchange was part of a general reorganization and reshuffling of corporate interests and assets among John Gibson and Dan Gibson, E. W. Ewalt and Carl Owenby, and their wives. The restructuring concerned a former corporation named "PLJ" and its transmutation to "Legar, Inc."; it reshuffled stockholders and exchanged ownership and liabilities of an airplane, patent rights on an energy saving devce, and several real estate poperties including the Pic 'N Save store. All this came about mainly as a result of disagreements and differences btween the Gibson brothers.

The defendants testified that, notwithstanding these machinations, the Pic 'N Save transfer was separate from the others involving Legar, Inc., and that it was only an exchange of Dan's title for John Gibson's and Ewalt's assumption of his indebtedness. The defendant-appellants contend the property was not sold for an amount in excess of $154,000 so as to make them liable to Dismuke up to $11,000. Defendants-appellants contend the only evidence to the contrary is the fact that the real estate transfer tax ($64.60) was calculated upon $208,585 value (which was the tax assessment value) over the $144,000 encumbrance. It is earnestly contended that $208,585 was used as the consideration or value to figure transfer tax precisely because there was no value exceeding $154,000 exchanged, and so the tax assessor's valuation was used (either properly or by mistake) because the deed could not be recorded without some declaration as to tax due.

Dismuke asserted that this statement of consideration or value on the deed, for purposes of figuring transfer tax, creates at least a presumption of consideration which appellants never rebutted. The appellants contend the declaration of consideration or value for transfer tax purposes creates no such presumption, or if it does, any presumption was conclusively rebutted by the allegedly undisputed evidence that no consideration was exchanged for the mere transfer of title of the store in exchange for assumption of Dan Gibson's indebtedness thereon. Appellants contend the jury's verdict for $11,000 cannot be sustained, and that the trial court erred in charging the transfer tax statute to the jury, although the trial court did not charge it as constituting a presumption of consideration. *Held*:

1. Our research indicates that the use of transfer tax revenue stamps as proof of consideration is a novel question in Georgia. "Questions in regard to the consideration for a deed . . . are not uncommon . . . [but] authority on the question [of presumption of consideration for a deed from the presence of revenue stamps thereon] is very sparse, [although] it is one which could conceivably arise in many jurisdictions." 51 ALR2d 1004. The case of Flynn v. Palmer, 270 Wis. 43 (70 NW2d 231), concerned whether a deed was a trust deed reverting to the grantor's heirs at his death, or a fee simple transfer to the grantee. The Wisconsin court, placing great emphasis on the fact that a transfer tax is not required for a simple trust deed, said the presence of revenue stamps on the document "creates a presumption that $7,000 was paid for the deed by [grantee]." Id., 70 NW2d at p. 233. In re McGeehin's Will, 134 Misc. 334 (235 NYS 477), cited by the Wisconsin court, likewise found a presumption of consideration based on revenue stamps. In Florida, it has been held: "The deed in question recited a consideration of $10.00 and other valuable considerations. In addition, there were revenue stamps affixed indi-

cating a consideration of $2,000. These factors were prima facie evidence of a valuable consideration. Florida Moss Products Co. v. City of Leesburg, 93 Fla. 656, 112 So. 572; 23 AmJur2d, Deeds, Sec. 70; Anno. 51 ALR2d 1004. The burden of proving otherwise was upon the defendants. To prevail upon their affirmative defense they had to prove by a preponderance of the evidence that the consideration recited in the deed and as indicated by the revenue stamps was not, in fact, the actual consideration, but that instead mere love and affection was the sole consideration involved." Kelly v. Threlkeld, 193 S2d 7 (Fla. Dist. Ct. App., 1966). See also Deeds, 23 AmJur2d, § 96, p. 140.

The appellee Dismuke puts forth cogent policy reasons why the presence of revenue stamps on a deed should create a presumption of the consideration thus indicated, such as the fact that revenue stamps are, and should reliably be, routinely used for property appraisal by tax assessors and in eminent domain proceedings, as well as in cases like those just cited, where inquiry must be made into consideration of a deed. See *Norris v. Osburn*, 243 Ga. 483, 485 (254 SE2d 860); *Top Quality Homes v. Jackson*, 231 Ga. 844, 845 (204 SE2d 600); *Berry v. Slappey*, 229 Ga. 109 (189 SE2d 394); and see, e.g., Redfield v. Iowa State Hwy. Comm., 251 Iowa 332 (99 NW2d 413, 420), where the Iowa court in a condemnation case held: "The revenue stamps [for purposes of comparing property value] are as reliably indicative of the consideration as a recited amount would be. . . . [T]he revenue stamps attached to the deed may be said to indicate with reasonable certainty the consideration paid. [Cits.]"

We think the reasoning of these cases is sound; however, in this case, it is necessary to hold only that value indicated for transfer tax purposes constitutes relevant and admissible evidence of a certain consideration or value. In this state, in 1975, the law imposed "on each deed, instrument or other writing by which any lands, tenements or other realty sold shall be *granted, assigned, transferred, or otherwise conveyed to or vested in,* the purchaser or purchasers . . . *when the consideration or value of the interest or property conveyed* (exclusively of the value of any lien or encumbrance . . . *exceeds $100, a tax at the rate of $1 for the first $1000 or fractional part thereof, and at the rate of 10 cents for each additional $100 or fractional part thereof.*" (Emphasis supplied.) Code Ann. § 92-801 (1974 Revision); see Code Ann. § 91A-3001 (1980 Revision). See present statute at OCGA § 48-6-1. The statutory mandate creates a reasonably certain indication of value or that a certain, ascertainable consideration exceeding $100 has passed and is represented by the amount of the tax. To hold that this evidence is irrelevant to the question of value would be to presume that the tax statute was not complied with, or that the statement of tax has no particular merit. In *State Hwy.*

*Dept. v. Parker*, 114 Ga. App. 270, 275 (3) (150 SE2d 875), where an expert sought to give his opinion of the value of property comparable to that being condemned, objection was made that he could not base his opinion as to sale price on the presence of revenue stamps on the deed, but rather should testify only from his own knowledge. We held: "Judicial notice is taken of the law requiring the affixing to deeds of revenue stamps . . . *and it is presumed that the revenue stamps affixed were in accord with the provisions of the law.*" In *Knight v. Munday*, 152 Ga. App. 406 (263 SE2d 188), the defendant sought to show he had already paid the full purchase price of land he bought ($5,000) as evidenced by the presence on the deed of $5 in revenue stamps, but the plaintiff successfully proved an oral contract to pay additional consideration, and was authorized to sue for it. The defendant contended the revenue he paid ought to be conclusive, but the plaintiff was permitted to prove otherwise. In *Norris v. Osburn*, supra, p. 485, the Supreme Court, in describing the facts of the case, stated: "The transfer tax on this deed *would indicate a consideration of $75,000.*" (Emphasis supplied.) See also *Berry v. Slappey*, supra. In *Top Quality Homes v. Jackson*, supra, the consideration "indicated" by revenue stamps to be $4,500 was found not to have been paid at all.

The payment of a transfer tax in this case provided evidence that the property had been conveyed or transferred for a consideration or value in excess of $154,000. The trial court did not charge the jury that the transfer tax payment created a presumption of a certain consideration, but merely recited the transfer tax law as "evidence" in the case. It was undisputed that the property Dismuke sold to John and Dan Gibson for $154,000, was actually valued at $255,000 by appraisal, and bore a tax assessment value of $208,585. Dismuke was not personally able to dispute the appellants' contention that the transfer was a mere assumption of debt by John Gibson and Ewalt, but there was contrary circumstantial evidence in the case which we must presume the jury considered. In evidence was a memorandum or worksheet used by the attorneys who prepared and evaluated the various corporate restructurings and exchanges, upon which the respective property exchanges were valued, and showing the Pic 'N Save store valued at $255,000. There was evidence and testimony that the transfer of Dan Gibson's interest in the Pic 'N Save store to John Gibson and Ewalt was not merely an isolated transaction but was part of the entire reshuffling and exchanging of various other properties and liabilities among persons and corporations. A letter from the attorney to Dan and John Gibson's mortgagee states: ". . . John W. Gibson and Dan D. Gibson, who both had a substantial interest in the corporation known as PLJ, Inc. have decided to up the corporate assets [this, the attorney explained at trial, was a typographical error; he testified he

meant to say "split up the corporate assets"]. . . . It is our desire, therefore, to substitute the name of G. W. Ewalt for that of Dan D. Gibson on the note now held by Douglas Federal Savings and Loan Association. *Probably the easiest way to handle this matter would be for the corporation to give to Douglas Federal a note to replace the one from John Gibson and Dan Gibson and then have a note from John Gibson and G. W. Ewalt making them individually liable for the debt. . . . The corporation to which the real estate is being transferred has the new name of Legar, Inc. The principals in this corporation merely want to get the property into the corporation* and have G. W. Ewalt substituted for Dan Gibson with regard to liability. . . ." (Emphasis supplied.) This transfer to the *corporation* was never corrected or changed. The jury was authorized to find that John and Dan Gibson did sell or transfer the Pic 'N Save building for value received in excess of $154,000. The trial court did not err in allowing the jury to consider the transfer tax valuation or in instructing the jury on the transfer tax requirements. Consequently, enumerations of error 1, 2, 5, 8, 9, and 10 are without merit.

2. The trial court did not err in the definition of "sale" and "sell" in its charge to the jury; nor particularly in charging, and recharging upon specific request, to the jury the law providing for assessment of real estate transfer taxes. The trial court did not, as appellants suggest, leave the jury confused and floundering as to the function of this law in the case, and did not charge that the tax law created a presumption of consideration, but gave it in connection with the explanation of direct and circumstantial evidence. It follows that all appellants' enumerations of error are without merit.

*Judgment affirmed. Quillian, P. J., and Carley, J., concur.*

DECIDED APRIL 13, 1984 —
REHEARING DENIED MAY 24, 1984 —

*Bob Reinhardt, Roy B. Allen, Jr.,* for appellants.
*Ben B. Mills, Jr.,* for appellee.

ON MOTION FOR REHEARING.

Appellees contend the decision creates a dangerous rule in holding the transfer tax declaration may be evidence of consideration or value, as applied to this case, because their compliance with the statutory requirement that tax be declared as to "consideration *or value*" does not in fact prove any consideration, because there was none. However, this was the precise reason we refused to go as far as to hold, as appellant wished, that the declaration created a *presumption of consideration.* The issue to be proved in this case was whether consideration in excess of $154,000 was exchanged and as to this fact it

cannot be error to allow proof of the "value" exchanged when value may or may not be evidence of consideration according to the state of the evidence and in the jury's discretion. The determination is a question of fact with all the evidence. The distinction between admissibility and weight must not be blurred (see *Mulkey v. State*, 155 Ga. App. 304, 307 (270 SE2d 816)); unless evidence is incompetent for a purpose or irrelevant and prejudicial, it is admissible. Admissibility is not determined by weight, which is a jury question. This is well illustrated in this case, where the *value* exchanged by the corporation and sellers was with all the evidence determined by the jury to in fact be consideration in excess of $154,000.

*Motion for rehearing denied.*