## 59819. MULKEY v. THE STATE.

BIRDSONG, Judge.

Arson. Edgar Mulkey was convicted of arson in the first degree, and appeals, enumerating three errors.

The burned store building housed a men's retail clothing business owned and operated by Mulkey. Chief witness against Mulkey was Disharoon, who plead guilty to the same offense, and whose testimony that Mulkey hired him to commit the crime is the only direct evidence that the appellant was a principal in the commission of the crime.

The evidence disclosed that Mulkey had approximately $60,000 in inventory in the store including a recent shipment of men's shirts. He had recently increased his "multi-peril" insurance from $30,000 to $40,000. He owed the business' former owner $8,000 on a note which had been due eighteen months prior to the fire; he was behind in monthly rental payments to the building's owner. Business had not been doing as well as he had expected. Mulkey and his wife had been thinking of selling the business and had potential buyers. About three months before the fire, Mulkey had reapplied for employment at Lockheed and had been mailed a notice of his rehiring ten days before the fire. Mulkey had removed an antique organ from the store the night before the fire because, he said, he had a potential buyer for the organ whose name he could not remember at trial; but he left the top part of the organ in the store and had intended to get it the next day.

A waitress in a nearby restaurant, also owned and operated by

Mulkey, saw Mulkey and Disharoon together drive up to the restaurant the evening before the fire. Early on Friday, the morning of the fire, two men saw Disharoon enter the men's store building with a key and saw him leave shortly thereafter. The waitress saw Disharoon come in the restaurant and speak to Mulkey early that Friday morning. On Wednesday, five days after the fire, but before Disharoon was arrested, Disharoon and a companion stopped at the restaurant because, as Disharoon told the companion, "this man here owes me some money that owns this restaurant"; when the two went inside, a man identified as Mulkey came over to Disharoon, and Disharoon said, "Have you got me some money" or "Do you have any money?" Mulkey gave Disharoon an undetermined amount of money, and Disharoon put it in his pocket without counting it. Disharoon's wife had been working for about five years in the restaurant as the cook; apparently Disharoon frequently visited the restaurant for hours at the time and had worked there himself on occasion. Mulkey stated that he occasionally lent Disharoon money, and that is what he was doing that day.

Disharoon testified that he and Mulkey first discussed burning the building two or three weeks before the fire; that Mulkey offered him $1,000 to do the job but never discussed any particular time that Disharoon was to do it, until the Thursday before Disharoon set the fire on Friday. Disharoon had earlier bought a five-gallon can of mineral spirits and set it in the back of Mulkey's truck. On Thursday evening before the fire, Disharoon helped Mulkey and Mulkey's teenaged son move the antique organ out of the store because, he said, Mulkey wanted to move it out before the fire. During this process, Disharoon told Mulkey's son to put the mineral spirits can in the back of the store. They also removed some tuxedos from the store. Afterwards, Disharoon and Mulkey drove back to the restaurant where Disharoon had left his car. Disharoon and Mulkey sat a while in the restaurant, and Disharoon testified that Mulkey then removed the store key from a large key ring containing many keys and gave the key to Disharoon. Disharoon testified that he went back to the store that evening and poured the mineral spirits on the stock and especially under the Tots & Teens counter; that Mulkey had specifically told him to pour it there because the Tots & Teens "was in a tight too." Disharoon went back and set the fire the next morning, intending to burn only the stock because, he said, "I wasn't wanting to burn the whole town up." He first had taken his wife to the restaurant and then went back to the restaurant after he set the fire; there he saw Mulkey and gave him back the key. There had been no agreement as to when Mulkey was to pay Disharoon.

There was evidence that there had been a disagreement or

dispute between Mulkey and Disharoon concerning some insurance proceeds allegedly due Disharoon's wife, and that Disharoon had accused Mulkey of pocketing the money; although the insurance agent explained the situation to Disharoon, Disharoon never did understand it, and there was evidence he had made threats because of it. An associate of Mulkey testified that Mulkey never kept his store key on his large key ring, but carried it separately in his pocket. Disharoon admitted that he had written letters to a man named Jacoby, whom he had earlier met in jail, but denied that he had ever sent Jacoby a letter stating that he was jealous of Mulkey and had burned Mulkey's store because Mulkey was allegedly having an affair with his, Disharoon's, wife. It is urged that the trial court erred in refusing to permit Jacoby to testify as to the contents of such a letter because the letter could not be produced. *Held:*

It is alleged that the testimony would show that Disharoon had burned Mulkey's store because of jealousy and had implicated Mulkey in the burning for the same reason. Objection to the testimony was interposed on grounds that the letter was the best evidence of what was in it; the testimony was excluded on mixed grounds that it was hearsay and was not the best evidence.

It is true that where one attempts to testify concerning a letter's contents, if the letter is available the letter itself is the best evidence of what is in it, and oral testimony is therefore inadmissible. In this case, Jacoby testified that while he still had some of Disharoon's letters, he did not have all of them; that he had diligently searched for the letter at issue but could not find it. The question of inaccessibility of primary evidence and diligence of the party is a determination within the discretion of the trial judge (Code Ann. § 38-212) and his decision will not be overturned unless that discretion is abused. *Brooks v. State,* 63 Ga. App. 575, 576 (2) (11 SE2d 688). In this case, we hold it was an abuse of that discretion to exclude testimony which should have qualified as secondary evidence (Code Ann. § 38-212) and which comprised appellant's most critical defense to the only direct evidence against him. The absence of the letter in court was explained by Jacoby, as was his diligence in searching for it; in no other way could this letter be accounted for but that it was "lost." This is good and reasonable cause in inaccessibility required under Code Ann. §§ 38-203 and 38-212, made clear at Code Ann. § 38-702.

Code Ann. § 38-203 requires only that "the best evidence *which exists* of the fact sought to be proved *shall be produced, unless its absence shall be satisfactorily accounted for."* (Emphasis supplied.) Secondary evidence is admissible when ". . . it shall appear that the primary evidence for some sufficient cause, is not accessible to the diligence of the party . . . [T]he court . . . shall hear the party himself

on the question of diligence and the inaccessibility of the primary evidence." (Code Ann. § 38-212). Under Code Ann. § 38-702, specifically, proof that a paper is lost or destroyed shall admit secondary evidence, and "the party shall be a competent witness to this point. The question of diligence is one for sound discretion of the court."

The function of the trial court is not to determine the worthiness or credibility of the secondary evidence, but is only to determine whether what is offered as evidence is the best form accessible to the court. See *Rushin v. State,* 63 Ga. App. 646, 648 (11 SE2d 844). The last person who in fact had custody of the letter must make a "complete and proper showing with respect to the alleged non-existence or inaccessibility or loss" of the letter. *Lott & Perkins v. Buck & Downing,* 113 Ga. 640, 641 (39 SE 70). Merely asserting the loss, without showing diligence in attempting to provide the item, will not do. *Lott & Perkins,* supra. The proper showing was made in this case, and the oral testimony as to the letter's contents should have been admitted. See *Lunday v. Thomas,* 26 Ga. 537 (3), 539 (fn); *Sinclair Refining Co. v. Giddens,* 54 Ga. App. 69 (4), 70 (187 SE 201); *Harrison v. State,* 20 Ga. App. 12 (3) (92 SE 388). If there be any question as to the credibility of the testimony, still the jury ought to receive it and determine its credibility in the same way it determines the credibility of the testimony offered by the arsonist Disharoon against appellant. The testimony was not hearsay but was original evidence which might explain Disharoon's conduct and ascertain his motives in implicating appellant in the offense (Code Ann. § 38-302; *Boggus v. State,* 136 Ga. App. 917 (222 SE2d 686)). Had the testimony been admitted, we cannot say that the jury would not have concluded that all the evidence in the case would not demand a verdict against Mulkey for the commission of arson beyond a reasonable doubt. The error in excluding it was therefore harmful. See *Cauley v. State,* 130 Ga. App. 278, 286-288, 290-293 (203 SE2d 239). We reverse the case for that reason and therefore find it unnecessary to examine appellant's remaining enumerations of error.

*Judgment reversed. Deen, C. J., and Sognier, J., concur.*

SUBMITTED MAY 5, 1980 — DECIDED JULY 2, 1980 — REHEARING DENIED JULY 15, 1980 —

*Carol W. Hunstein,* for appellant.
*Frank C. Mills, III, District Attorney,* for appellee.