40404, 40461. TOLISON v. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY; and vice versa.

(317 SE2d 185)

BELL, Justice.

These cases are here on certiorari. *Tolison v. Ga. Farm Bureau Mut. Ins. Co.*, 168 Ga. App. 187 (308 SE2d 386) (1983). They present two questions: first, whether an application for motor vehicle insurance coverage is in substantial compliance with the requirements of OCGA § 33-34-5 (b), see *St. Paul Fire &c. Ins. Co. v. Nixon*, 252 Ga. 469 (314 SE2d 215) (1984), and, second, whether, if an application form violates the requirements of OCGA § 33-34-5 (b), a jury issue as to the insured's right to optional coverages may nevertheless be raised by conflicting testimony concerning whether the insured was aware of his right to optional coverages at the time of the completion of the application. We answer both questions in the negative.

About April 17, 1979, Helen Tolison, the wife of the appellant, Harold Tolison, applied, on behalf of herself and Harold, for a motor vehicle liability insurance policy with Georgia Farm Bureau Mutual Insurance Company (Georgia Farm Bureau). The application is a two-sided document. The front page, most of which is filled with standard information concerning the insured and the insured's car, contains a square on about the middle of the page which provides information concerning ten available insurance coverages, including the applicable benefit limits and deductibles for each type of coverage. The square is in graphic form, with the left hand column providing, in abbreviated form (e.g., "PIP" for Personal Injury Protection), the types of coverages available. To the right of the listed coverages, the different policy limits and deductibles available for each type of coverage are located

in boxes, and, preceding each of these boxes is an empty box in which the insured is to place a check mark if he or she desires that amount of coverage. If no check mark precedes any limit for a type of coverage, then that coverage is not provided. In the instant case, the box providing for the basic $5,000 PIP coverage was checked. Immediately below the entire square is an acknowledgment statement in small, bold-faced capitals and a signature space for the insured. The acknowledgment provides that the insured "hereby acknowledges that I have accepted the coverages and/or limits that have a check . . . placed in front of above items and the absence of a check . . . indicates my rejection of that coverage and/or limit." Mrs. Tolison signed the form at the space provided under the acknowledgment and on the bottom of the back page. These two locations were the only signature spaces provided on the form.

On July 15, 1979, Harold was involved in an accident, and in the fall of 1981 he filed a complaint against Georgia Farm Bureau seeking retroactive increases in optional PIP benefits on the ground that he was not given the requisite opportunity to accept or reject those benefits. The parties filed cross-motions for summary judgment. In an affidavit given by Helen Tolison in support of her husband's motion for summary judgment, she states that the insurance agent did not explain the optional PIP coverage that was available, and that the separate spaces provided on the application for acceptance or rejection of optional coverages were not checked by her. Conversely, in an affidavit submitted in support of Georgia Farm Bureau's motion for summary judgment, the insurance agent who handled the Tolison application states that he explained each of the optional coverages in detail, that he explained each optional benefit would require an additional premium, and that Mrs. Tolison expressed an interest only in the most basic, inexpensive no-fault coverages.

The trial court granted Georgia Farm Bureau's motion for summary judgment and denied Tolison's. The Court of Appeals reversed the grant of summary judgment to Georgia Farm Bureau, finding that the application violated OCGA § 33-34-5 (b); however, the court affirmed the denial of summary judgment to Tolison, finding that there was "sharp conflict" with reference to the taking of the application, and that issues for jury determination remained concerning whether Tolison "was aware of his application for the minimum coverage under no-fault law." Case No. 40404 is the grant of Tolison's application for certiorari, and Case No. 40461 is the grant of Georgia Farm Bureau's application for certiorari.

1). OCGA § 33-34-5 (b) provides that on each application for motor vehicle liability insurance the insured must indicate by signature his or her acceptance or rejection of optional PIP and vehicle property damage coverages. See *Flewellen v. Atlanta Cas. Co.*, 250 Ga.

709, 711 (300 SE2d 673) (1983). In *Flewellen,* supra, at 711, we held that the requirements of OCGA § 33-34-5 (b) "are satisfied by two signatures, one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage." Subsequently, in *St. Paul Fire &c. Ins. Co. v. Nixon,* 252 Ga., supra, we noted that although we held in *Flewellen* that two signatures satisfied the requirements of OCGA § 33-34-5 (b), we did not hold that two signatures were required in every case, and we announced that the requirements of OCGA § 33-34-5 (b) could be satisfied by substantial compliance therewith. See OCGA § 1-3-1 (c) and Chief Justice Hill's special concurrence to our dismissal of the writ of certiorari in *Nalley v. Select Ins. Co.,* 251 Ga. 722, 723 (310 SE2d 918) (1983). We then addressed the issue of whether the application form in the *Nixon* case was in substantial compliance with the requirements of OCGA § 33-34-5 (b). *Nixon,* supra.

The policy application in *Nixon* consisted of two pages, and each was signed at the bottom. Notices on both the first and second pages directed the insured to complete the second page, which was titled "OFFER TO PURCHASE ADDITIONAL COVERAGE APPLICATION." Part 1 of the second page was titled "OPTIONAL PERSONAL INJURY PROTECTION COVERAGE," and immediately below this heading were two boxes, one below the other. The first box was followed by a statement which provided, "I do not want to purchase Optional Personal Injury Protection Coverage," and the second was followed by a statement which provided, "I want to purchase Optional Personal Injury Protection Coverage as indicated below." The line below the latter statement contained three boxes. To the right of each of these boxes were the aggregate benefit limits available for optional PIP coverage. They were $10,000, $25,000, or $50,000. The insured, if he or she desired to have optional PIP coverage, was to place an "x" in the box to the left of the amount desired. Nixon put an "x" in the box to the left of the statement "I do not want to purchase Optional Personal Injury Protection Coverage." *Nixon,* supra, p. 469.

Because we found it clear "from the form of the application that the intent of the insured [Nixon] was to reject optional PIP benefits and vehicle [property] damage protection," *Nixon,* supra, p. 470, we held that the form was in substantial compliance with the statutory requirements of OCGA § 33-34-5 (b), and satisfied the intent of the General Assembly to ensure " ' "that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing.*" *Flewellen,* supra, 250 Ga. at 714.' (Emphasis in original.) *Nalley v. Select Ins. Co.,* 251 Ga., supra, p. 724 (Hill, C. J., concurring specially)." *Nixon,* supra, p. 470.

In the instant case, as in *Nixon*, the form clearly does not contain both a signature indicating the insured's acceptance or rejection of optional PIP benefits and a signature indicating the insured's acceptance or rejection of vehicle damage coverage. See OCGA § 33-34-5. However, Georgia Farm Bureau argues that the form is in substantial compliance with OCGA § 33-34-5 (b) because it clearly evidences that Tolison was aware of and rejected his right to optional coverages. We disagree, because Georgia Farm Bureau's form falls far short of providing the insured with the same degree of clear information as that provided in *Nixon* concerning the insured's right to accept or reject optional PIP benefits.

The information on optional PIP coverage on the form in *Nixon* was prominently displayed in a separate part of the form and was provided in clear and easily readable sentences. On Georgia Farm Bureau's application the information on optional PIP benefits is contained in a small square, in which is compacted a list of ten available coverages, along with the benefit limits and deductibles available for those coverages. Compounding the confusion is that all this information is provided in abbreviated form, with no explanations of the meaning of the abbreviations. Thus, even though a signature space, along with an acknowledgment, is provided below this square, and even though a check was placed on the form in the box designating a desire for only the basic $5,000 PIP coverage, we find that the form does not clearly reveal whether Helen Tolison made a knowing waiver of her husband's right to optional PIP coverage. Therefore, we must conclude that the form was not in substantial compliance with OCGA § 33-34-5 (b). *Nixon*, supra, p. 470. Accordingly, we affirm that part of the Court of Appeals' opinion holding that Georgia Farm Bureau's application did not meet the requirements of OCGA § 33-34-5 (b).

2). The next issue is whether the Court of Appeals was correct in holding that, even though Georgia Farm Bureau's application form did not meet the statutory requirements, the case should go to the jury to let it determine the insured's right to optional PIP benefits. The court made this ruling because of conflicting testimony in the record concerning whether the insured was aware of his right to optional coverages. We reverse this part of the Court of Appeals' opinion.

In *Flewellen*, supra, 250 Ga. at 714, we stated that "[t]he purpose of the statute [OCGA § 33-34-5] is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme." Accord *Colwell v. Voyager Cas. Ins. Co.*, 251 Ga. 744 (2) (309 SE2d 617) (1983) (testimony of oral communications between in-

sured and agent concerning optional no-fault coverages properly excluded from consideration on question of insurer's good faith.) We decline to depart from the method of conflict resolution outlined in *Flewellen*, especially in view of our application of the substantial compliance rule to OCGA § 33-34-5 (b), and hold that the Court of Appeals erred in affirming the trial court's denial of Tolison's motion for partial summary judgment.

Case No. 40404. *Judgment reversed. All the Justices concur.*

Case No. 40461. *Judgment affirmed. All the Justices concur, except Clarke, Smith, and Gregory, JJ., who concur specially, and Marshall, P. J., and Weltner, J., who dissent.*

DECIDED JUNE 12, 1984 — REHEARING DENIED JUNE 29, 1984.

*Howard, Cook & Mullinax, C. Alan Mullinax, Judy C. King,* for appellant.

*Fain, Gorby, Reeves & Moraitakis, Donald M. Fain, Charles A. Wiley, Jr., Groover & Childs, Denmark Groover, Jr.,* for appellee.

*John E. James, James E. Butler, Jr., Ben B. Mills, Jr., Alfred L. Allgood, William S. Stone, Don C. Keenan, Andrew E. Estes, Lamar Sizemore,* amici curiae.

GREGORY, Justice, concurring specially.

The substantial compliance rule is inappropriate here and will do nothing but create confusion for the bar and the people of this state if it is used to govern application of OCGA § 33-34-5 (b). See *St. Paul Fire &c. Ins. Co. v. Nixon,* 252 Ga. 469 (314 SE2d 215) (1984). What is needed is a clear and easily applied guide which gives a definite answer in each case. Anything less spawns needless litigation. Such a rule was intended by the legislature from the outset and we do a disservice to add confusion. How can the citizens of Georgia be expected to apply a rule which has led the four justices of this court who adhere to the rule to divide two against two in this case as to the result which should be reached?

In *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983), we agreed with *Jones v. State Farm Mut. Auto. Ins. Co.,* 156 Ga. App. 230 (274 SE2d 623) (1980), and held the purpose of OCGA § 33-34-5 was to resolve conflicts which arise between insureds and their insurers by looking to the policy to determine if optional benefits have been rejected. The object was to avoid litigation. The method was to require that the attention of the insured be focused on each of the optional coverages and a specific decision as to acceptance or rejection of each be made by the insured through the device of requiring signatures on "separate spaces." We further held the re-

quirements of the statute are satisfied by two signatures, one for each of the optional coverages. We should now recognize that two signatures are required by the statute. That would correctly interpret the statute and provide the definite rule needed.

Because application of the rule of two signatures reaches the same result as the majority opinion, and not because I believe we should use the substantial compliance rule, I concur in the judgment only as to Division 1 of the majority opinion. I concur in Division 2 of the majority opinion.

I am authorized to state that Justice Clarke and Justice Smith join in this special concurrence.

MARSHALL, Presiding Justice, dissenting.

I respectfully dissent from the judgment in case no. 40461. I adhere to the rule of substantial compliance as announced in *St. Paul Fire &c. Co. v. Nixon,* 252 Ga. 469 (314 SE2d 215) (1984), and I find that the application in this case meets the standard of *Nixon.*

I am authorized to state that Justice Weltner concurs in this dissent.