## 68849. MILLER v. ALLSTATE INDEMNITY COMPANY.
### (325 SE2d 599)

CARLEY, Judge.

Relying upon *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (1980) and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673) (1983), appellant-insured brought suit to recover optional no-fault PIP benefits. The case was tried by the trial court sitting without a jury. The trial court found for appellee-insurer and appellant appeals.

At the bench trial, there was no dispute that appellant's signatures, evincing a rejection of all optional no-fault coverage, appeared on a completed application form which otherwise satisfied the requirements of former OCGA § 33-34-5 (b). "[T]he requirements of subsection (b) [of former OCGA § 33-34-5] are satisfied by two signatures, one for acceptance or rejection of optional PIP and another to indicate acceptance or rejection of vehicle damage coverage." *Flewellen v. Atlanta Cas. Co.*, supra at 711. However, appellant testified that appellee's agent had never discussed the matter of optional no-fault coverage with her. She further testified that, although she did not read the application, it was totally blank when she signed it and that the check marks in the boxes on the acceptance/rejection form indicating rejection of optional no-fault coverage were not made by her or in her presence. Appellant asserts that her testimony in this regard precludes consideration of the signed application as evidence of appellee's compliance with former OCGA § 33-34-5 (b), the intent of which was to require that "insurers *offer* optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made *knowingly and in writing.*" (Emphasis supplied.) *Jones v. State Farm Mut. Auto. Ins. Co.*, supra at 232. Appellant's interpretation of former OCGA § 33-34-5 (b) as requiring a contemporaneous checking of the acceptance/rejection boxes and the signing of the former was implicitly recognized as correct in *Allstate Ins. Co. v. O'Brien*, 172 Ga. App. 693 (324 SE2d 498) (1984).

However, unlike *O'Brien*, the instant case was not decided on summary judgment. A bench trial was held and appellant's testimony was not uncontradicted. Appellee's agent who had taken appellant's application also testified at the bench trial. Although the agent was unable to recall specifically the events surrounding appellant's application, he did testify that it was his invariable habit to follow a standard procedure in taking applications and that he had followed that procedure with regard to appellant's application. According to the agent, his procedure was first to explain to an applicant all possible coverages, the limits thereof, and the premiums therefor. Once the applicant determined what coverages he wished and in what amounts,

the agent then filled out the application form for the applicant's execution, using the information supplied by the applicant. According to the agent, his procedure also included the act of checking the appropriate boxes on the optional no-fault acceptance/rejection form, which always took place while the applicant was in the office.

As between appellant's testimony that she signed a blank application in ignorance of her right to optional no-fault coverage and the testimony of appellee's agent that he filled out the application for appellant's signature after discussing all coverages with her, the trial court, sitting as the trier of fact, elected to believe the latter. In its written findings, the trial court specifically found "that the agent, following his normal practice, offered all possible coverage limits of PIP coverage, and filled out the application to reflect [appellant's] wishes." Appellant asserts on appeal that the trial court erred in choosing to believe the agent's testimony, which was predicated upon his customary procedure, over her testimony, which was based upon her personal recollection of the actual event. However, the testimony of appellee's agent was clearly admissible and probative and the trial court was entitled to elect to believe it rather than appellant's version of the events. " 'Although a witness may have no distinct and independent recollection of the details of a fact occurring in the course of the routine of his business, he may testify . . . to his fixed and uniform habit in such cases, and state that he knows what he did in a given transaction was in accordance with that habit. [Cits.] The probative value of such evidence is for the [trier of fact] . . .' [Cits.]" *Green v. State*, 165 Ga. App. 702 (302 SE2d 604) (1983).

Having found that appellant signed a completed application which complied with the requirements of *Flewellen*, the trial court made the further finding "that nothing and no one prevented [appellant] from reading all the forms . . . [before] she signed on the signature lines of the acceptance/rejection form . . ." It is thus clear that the facts, as found by the trial court, authorized its ultimate conclusion of law that the instant case is controlled by the holding in *State Farm Mut. Auto. Ins. Co. v. Cone*, 165 Ga. App. 766 (302 SE2d 620) (1983). " 'The insured was not only free to examine the contract, he was under a duty to do so, and if he had done that he would have observed just what coverage it provided to him. If it was not what he wished to have, he could have renegotiated his contract . . .' [Cits.]" *State Farm Mut. Auto. Ins. Co. v. Cone*, supra at 767.

Thus, if, as appellant asserts, former OCGA § 33-34-5 (b) requires a contemporaneous checking of acceptance/rejection boxes and signature, the trial court still did not err in entering judgment for appellee.

*Judgment affirmed. Birdsong, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 15, 1984 —
REHEARING DENIED DECEMBER 18, 1984.

*William W. Lavigno III, Salvatore J. Serio,* for appellant.
*R. Clay Porter, Thomas S. Carlock,* for appellee.