70229. JEFFERSON PILOT FIRE & CASUALTY COMPANY
v. PRICKETT.
(338 SE2d 19)

BIRDSONG, Presiding Judge.

This is a case engendered by *Jones v. State Farm Mut. Auto. Ins. Co.*, 156 Ga. App. 230 (274 SE2d 623) (cert. dismissed, July 7, 1981) and *Flewellen v. Atlanta Cas. Co.*, 250 Ga. 709 (300 SE2d 673). The insurer, Jefferson Pilot Fire & Casualty Co. ("Jefferson Pilot") produced in defense of Prickett's suit for payment of optional insurance benefits, a "true copy" of the original optional benefits application, the original having been destroyed by Jefferson Pilot in July 1982, three years after Prickett's insurance was cancelled in accordance with standard practices for retirement of non-active files. The insurance agency averred and produced evidence that Prickett had check-marked and signed only the original which the agent then sent to Jefferson Pilot without making a copy of it. The unsigned "true copy" indicates check marks rejecting all optional benefits. However, the agent's sworn recollection was that Prickett signed it. Opposed to the agent's testimony is Prickett's sworn affidavit that he was never offered the opportunity to accept or reject additional personal injury protection benefits. The trial court rejected Jefferson Pilot's secondary evidence and granted summary judgment to Prickett, citing OCGA § 33-34-5 as it existed prior to the 1982 amendment, and *Tolison v. Ga. Farm Bureau Mut. Ins. Co.*, 253 Ga. 97 (317 SE2d 185). *Held*:

The code section in force relevant to Prickett provides: "Each application for a policy of motor vehicle liability insurance sold in this state must contain separate spaces for the insured to indicate his acceptance or rejection of each of the optional coverages listed in subsection (a) of this Code section and no such policy shall be issued in this state unless these spaces are completed and signed by the prospective insured." OCGA § 33-34-5 (b).

In construing this code section in 1980, *Jones*, supra, p. 233, we held that it "impos[es] an *evidentiary burden upon no-fault insurers to demonstrate* that optional coverages were expressly offered to, and knowingly accepted or rejected *in writing* by, each of their applicants for no-fault insurance." (Emphasis supplied.) We held that while State Farm offered the deposition of its agent to prove that Jones orally had been informed of the optional coverages and had knowingly but orally rejected these coverages, "Code Ann. § 56-3404 (b) [OCGA § 33-34-5 (b) prior to 1982 amendment] clearly sets out the requirements that . . . an applicant's rejection of optional no-fault coverages must be *in writing* as evidenced by his signature. . . . State Farm has consequently failed to carry its burden of proof in rebutting Jones' claim that he was never offered optional coverages."

In *Flewellen*, supra, p. 714, the Supreme Court agreed with *Jones* that the statutory intent was "to ensure 'that insurers offer optional coverages to applicants . . . *and* that an applicant's waiver of [this privilege] . . . be made knowingly *and in writing.*'" The Supreme Court added: "The purpose of the statute is *to resolve conflicts which arise when an insured contends that he was not informed* of his statutory right to optional benefits. When this claim is made, *the resolution of the issue will be to look to the policy* to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme." (Emphasis supplied.)

In *Colwell v. Voyager Cas. Ins. Co.*, 251 Ga. 744, 748 (309 SE2d 617), the Supreme Court held the trial court correctly excluded evidence that the insurance agent *orally* explained optional benefits to the insured and the insured *orally* rejected optional benefits, because *Flewellen* held the intent of OCGA § 33-34-5 is to ensure " 'that insurers offer optional coverages to applicants for no-fault insurance *and* that an applicant's waiver of his privilege to obtain optional coverages be made knowingly *and in writing'*. . . . The purpose of the statute is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When the claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme."

In *Tolison v. Ga. Farm Bureau Mut. Ins. Co.*, 253 Ga. 97, 100-101, supra, the Supreme Court held the trial court wrongly denied

summary judgment to Tolison because the application form did not meet statutory requirements, for evidence of *oral* communications proving that Tolison was aware of his right to optional coverage could not be considered as sufficient. The Supreme Court said, after quoting *Flewellen* and *Colwell*, that the resolution of the issue whether the insured understood his right to optional coverage "will be to look to the policy. . . . We decline to depart from [this] method of conflict resolution." See also *Montgomery v. Ga. Farm Bureau Mut. Ins. Co.*, 253 Ga. 169 (317 SE2d 837) and *Grange Mut. Cas. Co. v. Hall*, 173 Ga. App. 382, 383 (326 SE2d 497).

In all of the quoted cases, the optional benefits applications were inadequate under the provisions of OCGA § 33-34-5 (b) either because the existing signature reasonably could not be related to the apparently rejected optional coverages or evidence would not be permitted to show the insured was advised of, understood and rejected his optional benefits rights orally. In so holding, the Supreme Court has made it clear that the code section imposes an evidentiary burden upon the insurer to prove *by evidence of a signed form* that the insured knowingly rejected his optional benefits rights; the purpose of the statute was to *resolve all conflicts* that arise on the issue and those conflicts would be resolved by *looking to the policy form*, where such a form is available.

The ratio decidendi of *Jones, Flewellen,* and *Tolison* is that the insurer's evidentiary burden requires it to produce proof of a signed knowing rejection, and all conflicts are resolved by looking to the executed application. The proof depends upon the application showing a written acceptance or rejection.

However, there is in this case a conflict of evidence whether there was executed in writing a signed application by Prickett showing his choice of benefits. Such a document allegedly was destroyed in accordance with reasonable business practices for retirement of non-active files. Thus, we are faced with a question of admissibility of secondary evidence to establish the prior existence of a document proving election or rejection in writing of optional benefits by Prickett. See OCGA §§ 24-5-4; 24-5-2. Under that rule, if the writing was lost by theft or fire, or other reasonable explanation is offered for the nonavailability of the original document, oral evidence might be admissible in appropriate circumstances. We are here concerned with the fact of a pre-existing document and not the contents of that document. Its contents, once existence is established, is subject to proof by competent evidence. *Merrill Lynch, Pierce, &c. v. Zimmerman*, 248 Ga. 580 (285 SE2d 181); *Growth Properties of Fla. v. Wallace*, 168 Ga. App. 893, 898 (310 SE2d 715).

In *Renner v. Bank of Columbia*, 9 Wheat. (U. S.) 581, 596 (6 LEd 140), the Supreme Court said: "If the original [writing] is lost, by

accident, and no fault is imputable to the party, it is sufficient [to present secondary evidence]. . . . Every case of this kind must depend, in a great measure, upon its own circumstances. This rule of evidence must be so applied as to promote the ends of justice, and guard against fraud or imposition. If the circumstances will justify a well grounded belief, that the original paper is kept back by design, no secondary evidence ought to be admitted; but when no such suspicion attaches, and the paper is of that description that no doubt can arise as to the proof of its contents, there can be no danger in admitting the secondary evidence." See also 32A CJS 188, Evid., § 837.

"The best evidence rule, more correctly denominated the original document rule is as follows: In order to prove the terms of a writing, where the terms are material, the original writing must be produced unless it is shown to be unavailable for some reason other than the *serious fault* of the proponent. [Cits.]" (Emphasis supplied.) *Merrill Lynch, Pierce &c. v. Zimmerman*, supra, p. 580.

In *Pendley v. Murphy*, 112 Ga. App. 33, 35 (143 SE2d 674), we held: "While this section [§ 24-5-21] leaves the question of diligence to the sound discretion of the court, it has been held that, '[b]efore secondary evidence can be admitted, the party will be required to show that he has, in good faith, exhausted, in a reasonable degree, all the sources of information and means of discovery, which the nature of the case suggests and which were accessible to him.' *Vaughn v. Biggers*, 6 Ga. 188 (4); *Beall v. Francis*, 163 Ga. 894 (2b) (137 SE 251), and cit."

We believe that a reasonable construction of the *Tolison* decision allows an application of the provisions of OCGA § 24-5-21: "If a paper shall have been lost or destroyed, proof of the fact to the court *shall* admit secondary evidence. The question of diligence is one for the sound discretion of the court." (Emphasis supplied.) *Tolison* in essence held that when the original written and signed application form *is* produced, the fact of the insured's entitlement or nonentitlement to optional no-fault PIP benefits is thereby conclusively proved and *oral* communications are accordingly rendered irrelevant to the issue. *Tolison* does not purport to hold that the insured or the insurer *must* do the impossible and produce a lost original application and in its absence be precluded from proving the terms thereof by *secondary* evidence. Contrary to the trial court, we do not deem *Tolison* to be dispositive of the issue in the instant case, which is whether Jefferson Pilot responded with appropriate secondary evidence concerning Prickett's application so as to raise an issue as to the existence of a document showing Prickett's signed choice in writing of rejection of optional benefits. As hereinbefore stated, *Tolison* indeed is not inconsistent with the application of secondary evidence in appropriate cases.

As noted above, proof that one has made a diligent but vain effort to produce a lost or destroyed paper requires the admission of secondary evidence as to its contents. See generally *Mulkey v. State*, 155 Ga. App. 304 (270 SE2d 816). In the instant case, we are satisfied that a sufficient foundation was shown for the admission of secondary evidence concerning the application form pursuant to which the policy was issued to Prickett. See *Beall v. Francis*, supra. That foundation having been laid, Jefferson Pilot's further evidence in the nature of a copy of a form application assertedly executed by Prickett which was shown to have been in use during the relevant time period accompanied by sworn evidence that Prickett chose minimum coverage checking the rejection blanks and subscribed his choices, was probative secondary evidence of that application upon which assigned risk policies were being issued in 1977. See *Phillips v. Trowbridge Furn. Co.*, 86 Ga. 699 (3) (13 SE 19); *Croxton v. Leggett Motor Rebuilding*, 168 Ga. App. 258 (308 SE2d 640).

We are fully satisfied that such evidence raises a jury question whether Prickett was aware of his no-fault options and exercised his options in writing. "While it is true that secondary evidence as to the contents of an alleged lost or destroyed [paper] should not be admitted until it is shown that a duly executed original once existed ([cits.]), yet 'where no direct evidence of the execution of a written instrument is attainable, its execution may be proved by circumstances.' [Cit.]" *Sharp v. Autry*, 185 Ga. 160, 168-169 (194 SE 194).

Based upon the foregoing, it follows the trial court erred in concluding that the *Tolison* case mandated the rejection of secondary evidence to prove the prior existence of a written document.

*Judgment reversed. Carley and Sognier, JJ., concur.*

### ON MOTION FOR REHEARING.

On motion for rehearing, movant Prickett urges that our holding is in conflict with *Douglas v. Jefferson Pilot Fire &c. Co.*, 175 Ga. App. 457 (333 SE2d 634). As we construe our instant holding, there is no conflict with *Douglas*. In that case, the issue was whether an application form *was* in substantial compliance with the requirements of former OCGA § 33-34-5 (b). The issue in the instant case relates to only the applicability vel non of the secondary evidence rule in the *Jones* and *Flewellen* cases. We hold only that it was error to grant Prickett summary judgment on the ground that the decision in *Tolison* renders the secondary evidence rule inapplicable in such cases. That ground was the apparent basis for the trial court's grant of summary judgment in the instant case and it appears that, unlike *Douglas*, the issue of whether Jefferson Pilot's secondary evidence does or does not evince substantial compliance with applicable statu-

tory provisions has never been addressed in the trial court. The instant appeal is an inappropriate vehicle for initial consideration of the substantive issue of substantial compliance. Upon the return to the trial court of the remittitur in the instant case, the parties are free to renew their motions for summary judgment on whatever legal ground they deem appropriate. The instant holding stands only for the proposition that the inapplicability of the secondary evidence rule is not a valid ground for the grant of summary judgment in the instant case.

*Motion for rehearing denied.*

DECIDED OCTOBER 23, 1985 —
REHEARING DENIED NOVEMBER 13, 1985.

*Ward D. Hull*, for appellant.
*Jeffrey M. Starnes*, for appellee.