70421, 70422. ROSSHIRT et al. v. CINCINNATI INSURANCE
COMPANY; and vice versa.
(336 SE2d 612)

Carley, Judge.

In March of 1983, Charles and Marlene Rosshirt instituted the instant action against Cincinnati Insurance Company (Cincinnati). The Rosshirts' complaint invoked the then-recent decision in *Flewellen v. Atlanta Cas. Co.,* 250 Ga. 709 (300 SE2d 673) (1983) and sought $45,000 in optional no-fault PIP benefits for injuries sustained by Mrs. Rosshirt in a March 1977 automobile collision. Cincinnati answered, denying the material allegations of the complaint. The Rosshirts subsequently amended their complaint to add a prayer for bad faith penalties and attorney fees.

Discovery established the following: The Rosshirts purchased a new automobile in 1976 and spoke with an Allstate agent about insurance coverage. The agent advised that insurance could not be obtained from Allstate, since Mrs. Rosshirt had been involved in a previous collision. The Allstate agent did, however, tell the Rosshirts "that he could get [the] insurance from another company."

According to the affidavit of the Allstate agent, he submitted an assigned risk policy application form to the Rosshirts for them to fill out and sign. With regard to the specific issue of optional no-fault PIP coverage, the agent stated that he "would have required" that the application be signed in the appropriate place "as it was [his] normal and standard practice to do so as it was required in completing the application." However, Mr. Rosshirt testified in his deposition that he did not remember filling out any application for an assigned risk policy, stating: "I am not saying I didn't fill any out. I don't really remember." Mrs. Rosshirt's affidavit likewise contained her statement that she had "no recollection of filing or signing an [assigned risk policy application] form. . . ."

After their dealings with the Allstate agent, the Rosshirts were subsequently issued a policy by Cincinnati in January of 1977. It was pursuant to this policy that Mrs. Rosshirt apparently received $5,000 in basic no-fault PIP benefits after her March 1977 injuries. The Rosshirts were unable to produce a copy of the application that they filled out or even of the policy issued to them by Cincinnati. They

testified that they do not recall ever having received a copy of the application and that their policy has been misplaced. After a search of its records, Cincinnati likewise could not produce the actual application upon which it issued the policy to the Rosshirts. According to Cincinnati, since the Rosshirts had cancelled their policy in 1978, their original application had been destroyed, it being the custom of the insurance business to retain records for only five years.

Cincinnati did, however, produce blank copies of the assigned risk policy application forms which were employed during the approximate time period when the policy had been issued to the Rosshirts. These application forms, if bearing the signature of the applicant, would comply with former OCGA § 33-34-5. See *State Farm Mut. Auto. Ins. Co. v. Cone,* 165 Ga. App. 766 (302 SE2d 620) (1983); *Morris v. Fidelity &c. Co. of N.Y.,* 169 Ga. App 883 (315 SE2d 451) (1984); *National Indem. Co. v. Smith,* 172 Ga. App. 415 (323 SE2d 274) (1984). The evidence further showed that "[a]ll applications for PIP assigned risk cases are made on forms approved by the State of Georgia Insurance Department. These are generally known as 'state forms.' " Cincinnati also submitted the deposition of Mr. Robert Hilton, who had been the manager of the Georgia Automobile Assigned Risk Plan (Plan) during the relevant period. " 'The [P]lan . . . receives and equitably apportions applications for automobile liability insurance among all such insurers doing business in the State.' [Cit.]" *Harrison v. American Liberty Ins. Co.,* 155 Ga. App. 226 (1) (270 SE2d 389) (1980). See also OCGA § 40-9-100. According to Mr. Hilton's testimony, "each [Georgia] application [for an assigned risk policy] was reviewed by [his] staff personnel . . . for thoroughness. . . . Each of those boxes [on the standard application form] would have required attention be given to [it], and a signature would be required in connection with each completed box." Only after Mr. Hilton's staff had reviewed the application was it then forwarded to that insurer which the Plan determined should provide the assigned risk coverage. Mr. Hilton had no personal knowledge of the Rosshirts' application. He also admitted that his staff was not infallible in reviewing applications, but did testify that "the error ratio was extremely low."

Based upon the above discovery, Cincinnati and the Rosshirts filed cross-motions for summary judgment. After conducting a hearing, the trial court denied both motions but certified its orders for immediate review. Applications for interlocutory appeals from the denials of summary judgment were filed and this court granted those applications.

*Case Number 70421*

1. The Rosshirts are the appellants in this appeal. In asserting that the trial court erroneously denied their motion for summary judgment, the Rosshirts rely mainly upon *Tolison v. Ga. Farm Bureau Mut. Ins. Co.,* 253 Ga. 97, 100-101 (317 SE2d 185) (1984): "In *Flewellen,* supra, 250 Ga. at 714, we stated that '[t]he purpose of the statute [former OCGA § 33-34-5] is to resolve conflicts which arise when an insured contends that he was not informed of his statutory right to optional benefits. When this claim is made, the resolution of the issue will be to look to the policy to determine if there was reduction or rejection of those benefits in conformance with the statutory scheme.' [Cit.] We decline to depart from the method of conflict resolution outlined in *Flewellen.* . . ." The Rosshirts urge an interpretation of *Tolison* such that, once an insured moves for summary judgment supported solely by the assertion that he was not informed of his statutory right to optional no-fault PIP benefits, the insurer has the evidentiary burden of producing the *original* written and signed application form upon which it issued the policy, and if this evidentiary burden is not met, the insurer's liability for optional no-fault PIP benefits is established as a matter of law. Since Cincinnati has not produced the original signed application form pursuant to which it issued the policy to the Rosshirts, they contend that the trial court should have granted summary judgment in their favor.

We do not construe the *Tolison* decision as evincing a judicially created exception to the provisions of OCGA § 24-5-21: "If a paper shall have been lost or destroyed, proof of the fact to the court *shall* admit secondary evidence. The question of diligence is' one for the sound discretion of the court." (Emphasis supplied.) *Tolison* merely holds that when the original written and signed application form *is* produced, the fact of the insured's entitlement or nonentitlement to optional no-fault PIP benefits is thereby conclusively proved and *oral* communications are accordingly rendered irrelevant to the issue. *Tolison* does not purport to hold that the insured or the insurer *must* produce the original application and are precluded from proving the terms thereof by *secondary* evidence. In point of fact, the Rosshirts themselves have, at least in part, laid the foundation for the application of the secondary evidence rule in that they assert that the very policy upon which they have instituted suit has been lost. See *General Accident &c. Corp. v. Way,* 20 Ga. App. 106, 107 (3) (92 SE 650) (1917). Accordingly, we do not deem *Tolison* to be authority addressing the dispositive issue in the instant case, which is whether Cincinnati responded with sufficient secondary evidence concerning the Rosshirts' application so as to require the denial of the Rosshirts' motion for summary judgment.

As noted above, proof that one has made a diligent but vain effort to produce a lost or destroyed paper requires the admission of secondary evidence as to its contents. See generally *Mulkey v. State,* 155 Ga. App. 304 (270 SE2d 816) (1980). In the instant case, construing the evidence most strongly for Cincinnati, a sufficient preliminary foundation was laid for the admission of secondary evidence concerning the application form pursuant to which the policy was issued to the Rosshirts. See *Beall v. Francis,* 163 Ga. 894 (2) (137 SE 251) (1926). The specific question thus becomes whether there was sufficient secondary evidence that the Rosshirts were in fact given and signed a standard assigned risk policy application which complied with former OCGA § 33-34-5.

"Where a contract reduced to writing and properly executed is thereafter lost or destroyed, it is competent to prove by *parol testimony* what were the substantial terms and provisions thereof. . . ." *New Ware Furniture Store v. Reynolds,* 16 Ga. App. 19 (3) (84 SE 491) (1914). The Allstate agent did not attach to his affidavit a copy of the state-approved application form which was in use in 1977. According to his testimony, the standard form had been changed "many times" since 1977 and he had destroyed all the forms which had been in use that year. However, he did attach a copy of an application form which he identified as a "revision" of the 1977 standard form. He also averred that the attached revision was similar to the form in use in 1977 "in that both forms require separate signatures for the acceptance or rejection of the optional benefits for PIP. . . ." Construed most strongly for Cincinnati, the agent's testimony was sufficient secondary evidence of the substantial terms and provisions of the application form that he says was provided to the Rosshirts. See *Horne & Ponder v. O. B. & E. J. Evans,* 31 Ga. App. 370, 371 (3) (120 SE 787) (1923). See also *Georgia Home Ins. Co. v. Campbell,* 102 Ga. 106 (2) (29 SE 148) (1897); *Lewis v. State Bd. of Medical Examiners,* 23 Ga. App. 647 (4) (99 SE 147) (1919); *New Ware Furniture Store v. Reynolds,* supra.

"While it is true that secondary evidence as to the contents of an alleged lost or destroyed [paper] should not be admitted until it is shown that a duly executed original once existed ([cits.]), yet 'where no direct evidence of the execution of a written instrument is attainable, its execution may be proved by circumstances.' [Cit.]" *Sharp v. Autry,* 185 Ga. 160, 168-169 (194 SE 194) (1937). The Allstate agent also testified that, based upon his "normal and standard practice," he "would have required" appropriate execution of the no-fault PIP coverage portion of the form. This testimony was admissible and probative evidence of the procedure followed by the agent in taking the Rosshirts' application in the instant case. See *Miller v. Allstate Indem. Co.,* 173 Ga. App. 114 (325 SE2d 599) (1984). Also among the

"circumstances" indicative of the fact that the Rosshirts were issued their policy on a duly signed standard application reflecting a valid rejection of optional no-fault benefits is the evidence submitted by Cincinnati regarding the Plan. That evidence was sufficient "to show that such standard procedure was followed with regard to the [issuance of insurance] in the instant case." *Wood v. First Nat. Bank,* 167 Ga. App. 202, 203 (305 SE2d 852) (1983).

The evidence, when construed most strongly in favor of Cincinnati, was clearly sufficient to authorize a finding that, although the original application had been destroyed, the policy issued to the Rosshirts was an assigned risk policy, that the policy had been based upon a standard application form approved by the State, that the form had been subjected to the standard plan review procedure, and that the form forwarded to Cincinnati evidenced a completed application in conformity with the requirements of former OCGA § 33-34-5 (b). Accordingly, the trial court did not err in denying the Rosshirts' motion for summary judgment on their *Flewellen* claim. Cf. *State Farm Mut. Auto. Ins. Co. v. Cone,* supra.

### Case Number 70422

2. In this case, Cincinnati, as the appellant, asserts that the trial court erred in denying its motion for summary judgment. As discussed above, the evidence of record submitted by Cincinnati clearly would *authorize* a finding that the Rosshirts' policy was predicated upon a standard assigned risk application which had been completed in compliance with former OCGA § 33-34-5 (b). Thus, the issue in this appeal becomes whether the Rosshirts' evidence, when construed most favorably for them, was sufficient to show the existence of a genuine issue of material fact in this regard.

The Rosshirts do not *specifically* deny the existence of a standard assigned risk policy application or that they filled out and signed such an application. What they do assert is that they have no recollection of that being the case. " 'While ordinarily a jury should attach more weight to positive than to negative testimony, yet they are not absolutely bound to do so. Therefore, where the existence of a material and controlling fact in a case is strongly affirmed by positive testimony, and denied by other testimony, although somewhat negative in character, the question is issuable and can not be determined by the court as a matter of law . . . The want of recollection by some men of the existence of a fact might be considered as weighty as the positive recollection of some other men that the fact did not exist. The weight of the testimony whether, positive or negative, is for the jury, and ordinarily they are not bound to accept positive in preference to negative testimony.' [Cit.] [A party's] testimony that he [does] not re-

member [a fact], as testified to by the [other party], create[s] a question of fact to be resolved by the jury." *Bailey v. Belinfante,* 135 Ga. App. 574, 576 (218 SE2d 289) (1975).

The "material and controlling fact" in the instant case is whether the Rosshirts were offered and waived their " 'privilege to obtain optional coverages . . . knowingly *and in writing.*' [Cit.]" (Emphasis in original.) *Flewellen v. Atlanta Cas. Co.,* supra at 714. In the absence of the "best evidence" in this regard, which would be the actual application upon which the policy was issued, both Cincinnati and the Rosshirts are required to rely upon secondary evidence. Cincinnati's motion for summary judgment is predicated upon the testimony of the Allstate agent that he submitted a standard approved assigned risk policy application form to the Rosshirts which they filled out and signed and which he then forwarded to the Plan. Construing the evidence most favorable for the Rosshirts, their testimony that they have no recollection of this material and controlling fact, as testified to by the Allstate agent, is sufficient to create a jury question as to its existence. *Bailey v. Belinfante,* supra. Thus, on the record before us, Cincinnati's secondary evidence is ultimately dependent upon the credibility of the Allstate agent, and there remains a genuine issue of material fact as to that credibility question. " 'Where a question of credibility arises as to a material issue, summary judgment should not be granted. [Cits.]' [Cits.]" *Ash v. Spear,* 137 Ga. App. 12, 13 (223 SE2d 26) (1975). "The admissibility of . . . [secondary] evidence [is] a question for the court, but its weight and effect, when taken in connection with other facts in the case, [is] a question for the jury, and should be left to their consideration and judgment." *Graham v. Campbell,* 56 Ga. 258, 261 (1876). The trial court did not err in denying Cincinnati's motion for summary judgment.

*Judgments affirmed. Sognier, J., concurs. Birdsong, P. J., concurs in the judgment only.*

DECIDED OCTOBER 23, 1985.

*Robert C. Sacks,* for appellants.
*Edward L. Savell,* for appellee.