**SECOND DIVISION
BARNES, P. J.,
MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**February 5, 2013**

# In the Court of Appeals of Georgia

A12A2339. THOMAS v. THE STATE

BARNES, Presiding Judge.

A jury convicted F. Thomas of forgery in the first degree, and the trial court sentenced her under the First Offender Act. On appeal she contends that the trial court erred by admitting into evidence a photocopy of only the front of the forged check and by denying her motion for a directed verdict. We disagree, and for the following reasons, we affirm.

We construe the evidence on appeal in the light most favorable to the verdict and Thomas is no longer presumed to be innocent. *McKenzie v. State*, 300 Ga. App. 469 (685 SE2d 333) (2009). So viewed, the evidence established that Thomas went to Suntrust Bank and presented a check made out to her for $17,450.10, drawn on the Suntrust account of the Atlanta Athletic Club. The bank teller testified that Thomas

wanted to obtain cash for the check, so he attempted to verify it because there would be no hold on it, since it was drawn on a Suntrust account. If Thomas had merely wanted to deposit the check without obtaining cash, the teller testified that he would not have attempted to verify it. When he reviewed the check with his supervisor, they discovered that it did not look like previous checks from the club. Further, Thomas had no affiliation with the club, no reason to expect money from the club, and no permission from the club to deliver the check to the bank. Per its fraud policy, the bank kept the check and its branch manager faxed a copy of it to Suntrust's corporate security department.

The bank also faxed the check to the club, which confirmed it was fraudulent and reported the incident to the police. Thomas was subsequently arrested and tried for forgery in the first degree in violation of OCGA § 16-9-1.

1. Thomas makes several arguments related to the photocopy of the front of the check which the State used during trial to prove its case. Under former OCGA § 24-5-26,[1] a photocopy admitted as a business record must be an accurate representation of

_____

[1]As of January 1, 2013, the Best Evidence Rule in former OCGA § 24-5-1 et seq. has been replaced by OCGA § 24-10-1001 et seq. Specifically, OCGA § 24-5-26 et seq. has been replaced by OCGA § 24-10-1003, which provides that "A duplicate shall be admissible to the same extent as an original unless: (1) A genuine question is raised as to the authenticity of the original; or (2) A circumstance exists where it

2

the original, and Thomas argues that the State's copy was not an accurate representation because it showed only the front of the check and not the back.

Thomas did not argue to the trial court that the photocopy was not a proper business record, however. She argued only that the State should be required to produce the original check rather than use a photocopy. Accordingly, she waived this ground by failing to raise it in the trial court. See *Thorpe v. State*, 285 Ga. 604, 609 (4) (678 SE2d 913) (2009). Even if she had raised the issue before the trial court, however, Thomas has not shown that the State's failure to introduce a copy of the back of the check was harmful. No witnesses testified that Thomas had endorsed the check. Accordingly, we find this enumeration of error to be without merit.

2. Thomas argues that the trial court erred in allowing the State to use a photocopy of the check to prove the forgery count against her because it failed to call as a witness the last person to have custody of the original document to make a complete showing that the original was nonexistent, inaccessible, or lost, citing *Mulkey v. State*, 155 Ga. App. 304 (270 SE2d 816) (1980).

Under the Best Evidence Rule as it existed during this trial, primary evidence "is such as in itself does not indicate the existence of other and better proof," and would be unfair to admit the duplicate in lieu of the original."

3

"[s]econdary evidence is such as from necessity in some cases is substituted for stronger and better proof." Former OCGA § 24-5-1. Former OCGA § 24-5-2 provided that "to admit secondary evidence, it shall appear that the primary evidence for some sufficient cause is not accessible to the diligence of the party. This showing shall be made to the court, who shall hear the party himself on the question of diligence and the inaccessibility of the primary evidence."

Here, a bank supervisor testified that she gave the check to her branch manager, who then faxed a copy of the check to Suntrust corporate security. The State presented evidence that the original would have been stored at the branch where it was presented or in the bank's loss prevention storage facility, and the supervisor testified she had checked with the bank manager and searched the branch location but could not locate the original at the bank branch. Another bank employee testified that he unsuccessfully searched the bank's loss prevention storage facility for the check.

The trial court overruled Thomas's objection to the State's motion to admit the copy into evidence, finding that the State had made a reasonable effort to locate the original check and had made a prima facie showing that the original had been lost or misplaced. The court further held that the absence of a copy of the back of the check went to its weight rather than its admissibility.

4

Thomas argues that to show sufficient diligence, the State was required to call as a witness the branch manager, who was the last person known to have custody of the original check, relying on language in *Mulkey*, 155 Ga. App. at 307. The court in *Mulkey* reversed an arson conviction, holding that the trial court should have allowed the defendant to testify about a letter he had received from someone who implicated himself in the crime, even though he could not locate the letter, because he had showed diligence in attempting to do so. Id. While the court also said that the last person who had custody of the letter had to make the required showing of "non-existence or inaccessibility or loss" of the document, this language does not limit the category of evidence that will prove diligence, but only addresses one kind of evidence that will do so. Id.

In ruling on a "best evidence" objection, "[t]he trial court decides only whether the secondary evidence is offered in the best form which is accessible." *Spead v. State*, 187 Ga. App. 359, 360 (2) (370 SE2d 213) (1988). Whether the party seeking to introduce secondary evidence has been sufficiently diligent in looking for the primary evidence and whether that evidence is inaccessible "is a determination within the discretion of the trial judge, . . . and his decision will not be overturned unless that

5

discretion is abused." Id., *Mulkey*, 155 Ga. App. at 306; *Meeker v. State*, 249 Ga. 780, 783 (5) (294 SE2d 479) (1982).

Here, the trial judge did not abuse its discretion in determining that the original check was inaccessible or lost and that the State's search was sufficiently diligent to allow the State to introduce into evidence a copy of the check.

3. Finally, Thomas contends that the evidence against her was insufficient for a rational trier of fact to find beyond a reasonable doubt that she was guilty of forgery in the first degree. The offense as set forth in the statute applicable here provided that a person committed the offense of forgery in the first degree when she, with intent to defraud, delivered any writing that "purports to have been made . . . by authority of one who did not give such authority." Former OCGA § 16-9-1 (effective until July 1, 2012). Thomas argues the State failed to present sufficient evidence that she presented the check at issue with the intent to defraud.

"[T]he knowledge element of a violation of a criminal statute can be proved by demonstrating either actual knowledge or deliberate ignorance." *Taylor v. State*, 293 Ga. App. 551, 443 (667 SE2d 405) (2008). Thomas received a $17,450.10 check from an entity with whom she had no connection or expectation of payment, and presented it to a bank teller in an attempt to obtain cash. She never asked the teller

6

whether "the check was good or not." "Based on the foregoing, we find that the evidence presented was sufficient for a reasonable jury to determine that, at the very least, [Thomas] remained deliberately ignorant of the fraudulent nature of the checks." Id. Accordingly, we affirm the judgment of conviction.

*Judgment affirmed. McFadden, J., concur and McMillian, J., concur in judgment only.*